## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **RODERICK DEMMINGS,** on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>   v.<br><br>**KKW TRUCKING, INC.,**<br><br>        Defendant. | Case No. 3:14-cv-494-SI<br><br>**OPINION AND ORDER** |

Justin M. Baxter, BAXTER & BAXTER, LLP, 8835 S.W. Canyon Lane, Suite 130, Portland, OR 97225; Matthew A. Dooley and Anthony R. Pecora, O'TOOLE, MCLAUGHLIN, DOOLEY & PECORA, LPA, 5455 Detroit Road, Sheffield Village, OH 44054. Of Attorneys for Plaintiff.

Dennis G. Woods and Andrew T. Gust, SCHEER LAW GROUP, 101 S.W. Main Street, Suite 1600, Portland, OR 97204. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff Roderick Demmings filed a putative class action lawsuit against Defendant KKW Trucking, Inc. ("KKW"). Plaintiff alleges that KKW violated the Fair Credit Reporting Act ("FCRA")[1] when KKW procured Plaintiff's consumer information from two consumer reporting agencies without providing Plaintiff proper notice and, for one report, without his consent. Plaintiff also alleges that KKW ultimately used one of Plaintiff's consumer reports as a

---

[1] 15 U.S.C. §§ 1681 *et seq.*

basis for taking an adverse employment action against him, again without providing the statutorily mandated notifications.

Plaintiff filed a First Amended Complaint on June 12, 2015. ECF 24. The Court granted the parties' joint motion to stay the case until the Supreme Court decided the case of *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), which potentially implicated Plaintiff's standing in this case. ECF 33. After *Spokeo* was decided, KKW filed a motion to dismiss Plaintiff's First Amended Complaint. ECF 35. At oral argument, it became apparent that the First Amended Complaint did not clearly delineate which facts were applicable to Plaintiff and which were applicable to Mr. Neil C. Scott, a former plaintiff who was voluntarily dismissed from the case. Accordingly, the Court ordered Plaintiff to file a Second Amended Complaint and denied KKW's motion to dismiss without prejudice and with leave to renew. ECF 49.

Plaintiff then filed his Second Amended Complaint. ECF 50. KKW filed a renewed motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), asserting that the Court lacks subject matter jurisdiction because Plaintiff does not allege a concrete and particularized injury, and thus does not have Article III standing. For the reasons discussed below, KKW's motion to dismiss is denied.

## STANDARDS

### A.  Article III Standing

The U.S. Constitution confers limited authority on the federal courts to hear only active cases or controversies brought by persons who demonstrate standing. *See Spokeo*, 136 S. Ct. at 1546-47; *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 726 (2013). Standing "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo*, 136 S. Ct. at 1547.

To have standing, a plaintiff must have "personal interest . . . at the commencement of the litigation." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). The required personal interest must satisfy three elements throughout the litigation: (1) an injury in fact, *i.e.*, an invasion of a legally protected interest that is concrete and particularized, as well as actual or imminent; (2) a causal connection between the injury-in-fact and the defendant's challenged behavior; and (3) likelihood that the injury-in-fact will be redressed by a favorable ruling. *Id.* at 180-81, 189; *see also Spokeo*, 136 S. Ct. at 1547 (reiterating that the "irreducible constitutional minimum" of standing consists of "an injury in fact . . . fairly traceable to the challenged conduct of the defendant, and . . . likely to be redressed by a favorable judicial decision").

An injury is "particularized" if it "affect[s] the plaintiff in a personal and individual way." *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992)). An injury is "concrete" if it is "'*de facto*'; that is it must actually exist," meaning that it is "'real' and not 'abstract.'" *Id.* "'Concrete' is not, however, necessarily synonymous with 'tangible.' Although tangible injuries are perhaps easier to recognize, [the Supreme Court has] confirmed in many . . . previous cases that intangible injuries can nevertheless be concrete." *Id.* at 1549.

### 1.  Standing Conferred by Statute

Although Article III's injury requirement cannot be displaced by statute, when a statute creates a legal right, the invasion of that legal right may create standing. *See Spokeo*, 136 S. Ct. at 1549 (noting that Congress "is well positioned to identify intangible harms that meet minimum Article III requirements" and "has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before," but emphasizing that "Article III standing requires a concrete injury even in the context of a statutory violation");

*Edwards v. First Am. Corp.*, 610 F.3d 514, 517 (9th Cir. 2010) (noting that standing can exist by virtue of "statutes creating legal rights, the invasion of which creates standing"). This is sometimes referred to as "statutory standing."

The relevant question for statutory standing is "whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Edwards*, 610 F.3d at 517. This can be established by pleading a violation of a right conferred by statute so long as the plaintiff alleges "a distinct and palpable injury to himself, even if it is an injury shared by a large class of other possible litigants." *Warth v. Seldin*, 422 U.S. 490, 501 (1975). A "violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact. In other words, a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." *Spokeo*, 136 S. Ct. at 1549 (emphasis in original). A plaintiff cannot, however, "allege a bare procedural violation [of a statute], divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Spokeo*, 136 S. Ct. at 1549 (providing, by way of example of a procedural violation that would not likely present any material risk of harm, an allegation that a credit reporting agency disseminated a report containing an incorrect zip code). Additionally, in statutorily created causes of action, the plaintiff must demonstrate that he or she is within the "zone of interests" protected by the law invoked in order to have standing to sue for a violation of the statute. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1388-89 (2014). Whether a plaintiff has stated a basis for statutory standing is generally tested under Rule 12(b)(6) rather than Rule 12(b)(1). *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).

### 2.  Standing in Class Action Context

In the class action context, "standing is satisfied if at least one named plaintiff meets the[se] [three] requirements." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007). A plaintiff carries that burden by putting forth "the manner and degree of evidence required" by whatever stage of litigation the case has reached. *Lujan*, 504 U.S. at 561.[2] "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Id.* at 561 (alteration in original) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)); *see also Barnum Timber Co.*, 633 F.3d at 899 (noting that at the motion to dismiss stage, Article III standing is adequately demonstrated through allegations of "specific facts plausibly explaining" why the standing requirements are met).

### B.  Motion to Dismiss Under Rule 12(b)(1)

Federal courts are courts of limited jurisdiction. *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013) (quotation marks omitted). As such, a court is to presume "that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted); *see also Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A motion to dismiss under Federal

---

[2] "[T]he evidence necessary to support standing may increase as the litigation progresses . . . ." *Barnum Timber Co. v. EPA*, 633 F.3d 894, 899 (9th Cir. 2011) (citing *Lujan*, 504 U.S. at 561); *see also Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1012 n.3 (1992) ("*Lujan*, since it involved the establishment of injury in fact at the *summary judgment stage*, required specific facts to be adduced by sworn testimony; had the same challenge to a generalized allegation of injury in fact been made at the pleading stage, it would have been unsuccessful." (emphasis in original)).

Rule of Civil Procedure 12(b)(1) for lack of "subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002). An objection that a particular court lacks subject matter jurisdiction may be raised by any party, or by the court on its own initiative, at any time. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006); Fed. R. Civ. P. 12(b)(1). The Court must dismiss any case over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3).

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction may be either "facial" or "factual." *See Safe Air for Everyone*, 373 F.3d at 1039. A facial attack on subject matter jurisdiction is based on the assertion that the allegations contained in the complaint are insufficient to invoke federal jurisdiction. *Id.* "A jurisdictional challenge is factual where 'the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction.'" *Pride v. Correa*, 719 F.3d 1130, 1133 n.6 (9th Cir. 2013) (quoting *Safe Air for Everyone*, 373 F.3d at 1039)). When a defendant factually challenges the plaintiff's assertion of jurisdiction, a court does not presume the truthfulness of the plaintiff's allegations and may consider evidence extrinsic to the complaint. *See Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012); *Robinson*, 586 F.3d at 685; *Safe Air for Everyone*, 373 F.3d at 1039. A factual challenge "can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency." *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996) (citation and quotation marks omitted).

## C.  Motion to Dismiss Under Rule 12(b)(6)

Lack of statutory standing requires dismissal for failure to state a claim. *See Maya*, 658 F.3d at 1067. A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs.,*

*Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). All reasonable inferences from the factual allegations must be drawn in favor of the plaintiff. *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

**D.  Fair Credit Reporting Act**

The FCRA seeks to ensure "fair and accurate credit reporting." 15 U.S.C. § 1681(a)(1). "To achieve this end, [the FCRA] regulates the creation and use of consumer report[s]." *Spokeo, Inc.*, 136 S. Ct. at 1545 (quotation marks omitted). The FCRA permits consumer reporting agencies to furnish consumer reports, as relevant here, to employers "to use the information for

employment purposes." § 1681b(a)(3)(B). The FCRA also imposes certain restrictions on

employers' use of consumer reports for employment purposes. *See* § 1681b(b).

The restrictions at issue in this case are set forth in §§ 1681b(b)(2)(B) and

1681b(b)(3)(B). Specifically, § 1681b(b)(2)(B) requires notice to, and consent from, certain job

applicants *before* an employer's procurement of the applicant's consumer report, and

§ 1681b(b)(3)(B) requires an employer to provide certain notifications to the applicant *after* the

employer has obtained the applicant's consumer information and taken adverse action against the

applicant on the basis, at least in part, of that information.

In relevant part, § 1681b(b)(2)(B) provides:

> If a consumer described in subparagraph (C) applies for
> employment by mail, telephone, computer, or other similar means,
> at any time before a consumer report is procured or caused to be
> procured in connection with that application—
>
> (i) the person who procures the consumer report on the consumer
> for employment purposes shall provide to the consumer, by oral,
> written, or electronic means, notice that a consumer report may be
> obtained for employment purposes, and a summary of the
> consumer's rights under section 1681m(a)(3)[3] of this title; and

---

[3] Section 1681m(a) lists duties of users taking adverse actions on the basis of information
contained in consumer reports:

> If any person takes any adverse action with respect to any consumer that is
> based in whole or in part on any information contained in a consumer report, the
> person shall—
>
> (1) provide oral, written, or electronic notice of the adverse action to the consumer;
>
> (2) provide to the consumer written or electronic disclosure—
>
> (A) of a numerical credit score as defined in section 1681g(f)(2)(A) of this title
> used by such person in taking any adverse action based in whole or in part on any
> information in a consumer report; and
>
> (B) of the information set forth in subparagraphs (B) through (E) of section
> 1681g(f)(1) of this title;

PAGE 8 – OPINION AND ORDER

> (ii) the consumer shall have consented, orally, in writing, or
> electronically to the procurement of the report by that person.

The notice and consent requirements of § 1681b(b)(2)(B) only apply if, as relevant here, "the consumer is applying for a position over which the Secretary of Transportation has the power to establish qualifications and maximum hours of service"[4] and "as of the time at which the person procures the report or causes the report to be procured the only interaction between the consumer and the [employer] has been by mail, telephone, computer, or other similar means." § 1681b(b)(2)(C).

Under § 1681b(b)(3)(B):

> (i) If a consumer described in subparagraph (C) applies for
> employment by mail, telephone, computer, or other similar means,
> and if a person who has procured a consumer report on the

---

> (3) provide to the consumer orally, in writing, or electronically—
>
> (A) the name, address, and telephone number of the consumer reporting agency (including a toll-free telephone number established by the agency if the agency compiles and maintains files on consumers on a nationwide basis) that furnished the report to the person; and
>
> (B) a statement that the consumer reporting agency did not make the decision to take the adverse action and is unable to provide the consumer the specific reasons why the adverse action was taken; and
>
> (4) provide to the consumer an oral, written, or electronic notice of the consumer's right—
>
> (A) to obtain, under section 1681j of this title, a free copy of a consumer report on the consumer from the consumer reporting agency referred to in paragraph (3), which notice shall include an indication of the 60-day period under that section for obtaining such a copy; and
>
> (B) to dispute, under section 1681i of this title, with a consumer reporting agency the accuracy or completeness of any information in a consumer report furnished by the agency.

[4] The Secretary is authorized to promulgate requirements for qualifications, hours of service, safety, and equipment standards for commercial motor vehicle operators such as truck drivers in 49 U.S.C. § 31502.

PAGE 9 – OPINION AND ORDER

consumer for employment purposes takes adverse action on the employment application based in whole or in part on the report, then the person must provide to the consumer to whom the report relates, in lieu of the notices required under subparagraph (A) of this section and under section 1681m(a) of this title, within 3 business days of taking such action, an oral, written or electronic notification—

(I) that adverse action has been taken based in whole or in part on a consumer report received from a consumer reporting agency;

(II) of the name, address and telephone number of the consumer reporting agency that furnished the consumer report (including a toll-free telephone number established by the agency if the agency compiles and maintains files on consumers on a nationwide basis);

(III) that the consumer reporting agency did not make the decision to take the adverse action and is unable to provide to the consumer the specific reasons why the adverse action was taken; and

(IV) that the consumer may, upon providing proper identification, request a free copy of a report and may dispute with the consumer reporting agency the accuracy or completeness of any information in a report.

The notice requirements of § 1681b(b)(3)(B) only apply to the same category of applicants as § 1681b(b)(2)(B), namely, those applying for positions over which the Secretary of Transportation has power and who have not had any in-person contact with the person in connection with the employment application. § 1681b(b)(3)(C).

The FCRA also provides that "[a]ny person who willfully fails to comply with any requirement [of the FCRA] with respect to any consumer is liable to that consumer" for actual damages or statutory damages of $100 to $1,000 per violation, costs of the action and attorney's fees, and possibly punitive damages. § 1681n(a). For a merely negligent violation, however, the defendant is only liable for actual damages and not statutory damages, plus costs and fees.

**BACKGROUND**

Plaintiff alleges that he is a "consumer" and that KKW is a person using "consumer reports" for "employment purposes" and to take "adverse action" against consumers, as those terms are defined by and used within the FCRA. Second Amended Class Action Complaint ("Second Am. Compl.") (ECF 50) ¶¶ 4-6.

On or around March 8, 2012, Plaintiff applied online with KKW for a position as a truck driver. *Id.* ¶ 7. KKW's application form did not contain any notice advising Plaintiff that KKW would obtain a consumer report to determine Plaintiff's eligibility for employment, that Plaintiff has the right to obtain a free copy of any consumer report obtained by KKW, or that Plaintiff could dispute information contained in any consumer report obtained by KKW directly with the credit reporting agency. *Id.* ¶ 25. KKW did, however, provide Plaintiff with a release form to obtain his State of Washington driving record, also known as a "motor vehicle report" ("MVR"), which Plaintiff signed and returned on or about March 8, 2012. *Id.* ¶ 11 and Ex. A (ECF 50-1). KKW did not obtain Plaintiff's MVR (which Plaintiff alleges is a consumer report under the FCRA[5]) until after Plaintiff returned his signed consent form. *Id.* ¶¶ 11-12. That consent form, however, did not provide Plaintiff with the necessary notification required under the FCRA or inform him of his numerous rights granted under the FCRA. *Id.* ¶ 23 and Ex. A. The form identifies Total Information Services, Inc. d/b/a DAC Services as the entity from which KKW would obtain Plaintiff's MVR. *Id.* Ex. A. Plaintiff did not discover that KKW had obtained

---

[5] In the Second Amended Complaint, Plaintiff references his MVR as a "consumer report." In Plaintiff's memorandum in opposition to KKW's motion to dismiss, Plaintiff argues that under the FCRA an MVR constitutes a consumer report because it is a "written . . . communication of . . . information by a consumer reporting agency that is used "for the purpose of serving as a factor in establishing the consumer's eligibility for" employment. 15 U.S.C. § 1681a(d)(1).

Plaintiff's MVR from a different, possibly related, company, HireRight, Inc. ("HireRight"), as part of the application screening process until on or about March 25, 2014. *Id.* ¶ 13.

In May 2015, Plaintiff learned for the first time that KKW had also obtained a consumer report on Plaintiff from A-Check. *Id.* ¶ 28. Plaintiff further learned that KKW denied Plaintiff employment because of information contained in his A-Check consumer report. *Id.* ¶ 31. Despite KKW taking the adverse action of denying Plaintiff employment based on a consumer report, Plaintiff alleges that KKW did not disclose to Plaintiff either verbally, electronically, or in writing within three business days of taking the adverse action: (1) that the adverse action was taken based in whole or part on the consumer report; (2) the name, address, and telephone number of the consumer reporting agency (A-Check); (3) that A-Check did not make the decision to take adverse action and is unable to provide Plaintiff with specific reasons why the adverse action was taken; or (4) that Plaintiff could request a free copy of the report and may dispute with A-check the accuracy or completeness of the report. *Id.* ¶ 29.

Plaintiff also alleges that KKW generally does not advise applicants orally, in writing, or by electronic means, of an applicant's rights under the FCRA, and that KKW does not obtain the required consent before procuring consumer reports. *Id.* ¶¶ 36-38. Plaintiff further alleges that KKW generally does not provide either in-person or remote applicants the required disclosures that an adverse action was taken, at least in part, because of a consumer report. *Id.* at ¶ 39.

## DISCUSSION

KKW argues that Plaintiff fails to allege a concrete or particularized injury and thus fails to adequately plead Article III standing. KKW also argues that the factual predicate for Plaintiff's claims is incorrect. The Court addresses each argument in turn.

## A.  Article III Standing

KKW primarily relies on *Spokeo* to argue that Plaintiff alleges no more than a "bare procedural" violation of the FCRA. Plaintiff responds that the relevant provisions of the FCRA provide substantive rights, including informational and privacy rights. Plaintiff also argues that he has adequately alleged a concrete and particularized injury from KKW's violations of two provisions of the FCRA. First, Plaintiff alleges that KKW violated 15 U.S.C. § 1681b(b)(2)(B) by procuring Plaintiff's HireRight[6] consumer report without providing the statutorily required disclosures, including informing Plaintiff that he has the right to a free copy of his HireRight report and the right to dispute with HireRight the accuracy of any report. *See* Second Am. Compl. ¶¶ 61-63. Plaintiff alleges that KKW's willful failure to provide § 1681b(b)(2)(B) disclosures caused him an informational injury and violated his privacy rights. *Id.* ¶¶ 61, 64. Second, Plaintiff alleges that KKW violated 15 U.S.C. § 1681b(b)(3)(B) by using Plaintiff's A-Check consumer report to take an adverse employment action against him without providing Plaintiff the statutorily required disclosures, causing him an additional concrete, informational injury. *See* Second Am. Compl. ¶ 69-71.

### 1.  Recent Circuit Decisions Regarding Concrete Harm from FCRA Violations

The Ninth Circuit recently found that allegations of a violation of the FCRA's statutory requirements can be a concrete and particularized injury for purposes of Article III standing. *Syed v. M-I, LLC*, --- F.3d ---, 2017 WL 1050586, at *4-5 (9th Cir. Mar. 20, 2017). The Ninth Circuit distinguished the "bare procedural violation" at issue in *Spokeo*, deciding that where the

---

[6] Although Plaintiff's factual allegations appear to demonstrate that Plaintiff did not receive any disclosures or provide any authorization for KKW to procure his A-Check consumer report, Plaintiff's Count One under § 1681b(b)(2)(B) alleges injury only with respect to the HireRight consumer report. Therefore, the Court does not address whether KKW violated Plaintiff's informational rights or privacy rights by obtaining his A-Check consumer report without disclosure or authorization.

FCRA creates a right to information or privacy, a violation of the FCRA will constitute concrete

injury.[7] *Id.* at *4. As the Ninth Circuit explained, such rights are created by 15 U.S.C.

§ 1681b(2)(A):

> Syed alleges more than a "bare procedural violation." The
> disclosure requirement at issue, 15 U.S.C. § 1681b(b)(2)(A)(i),
> creates a right to information by requiring prospective employers
> to inform job applicants that they intend to procure their consumer
> reports as part of the employment application process. The
> authorization requirement, § 1681b(b)(2)(A)(ii), creates a right to
> privacy by enabling applicants to withhold permission to obtain the
> report from the prospective employer, and a concrete injury when
> applicants are deprived of their ability to meaningfully authorize
> the credit check. By providing a private cause of action for
> violations of Section 1681b(b)(2)(A), Congress has recognized the
> harm such violations cause, thereby articulating a "chain [ ] of
> causation that will give rise to a case or controversy." *See
> Spokeo*, 136 S. Ct. at 1549 (quoting *Lujan v. Defs. of Wildlife*, 504
> U.S. 555, 580 (1992) (Kennedy, J., concurring)).
>
> Syed alleged in his complaint that he "discovered Defendant M-I's
> violation(s) within the last two years when he obtained and
> reviewed his personnel file from Defendant M-I and discovered
> that Defendant M-I had procured and/or caused to be procured a
> 'consumer report' regarding him for employment purposes based
> on the illegal disclosure and authorization form." This allegation is
> sufficient to infer that Syed was deprived of the right to
> information and the right to privacy guaranteed by
> Section 1681b(b)(2)(A)(I)–(ii) because it indicates that Syed was
> not aware that he was signing a waiver authorizing the credit check
> when he signed it. Drawing all reasonable inferences in favor of
> the nonmoving party, we can fairly infer that Syed was confused
> by the inclusion of the liability waiver with the disclosure and
> would not have signed it had it contained a sufficiently clear

---

[7] Numerous courts have come to the same conclusion regarding the FCRA and similar statutes. *See, e.g.*, *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 638-40 (3d Cir. 2017); *Church v. Accretive Health, Inc.*, 654 F. App'x. 990, 994 (11th Cir. July 6, 2016); *Moody v. Ascenda USA Inc.*, 2016 WL 5900216, at *3-4 (S.D. Fla. Oct. 5, 2016); *Firneno v. Radner Law Group, PLLC*, 2016 WL 5899762, at * 4 (E.D. Mich. Sept. 28, 2016); *Meza v. Verizon Commc'ns, Inc.*, 2016 WL 4721475, at *3 (E.D. Cal. Sept. 9, 2016); *Perrill v. Equifax Info. Servs., LLC.*, --- F. Supp. 3d ---, 2016 WL 4572212, at *3-4 (W.D. Tex. Aug. 31, 2016); *Witt v. Corelogic Saferent, LLC*, 2016 WL 4424955, at *12-14 (E.D. Va. Aug. 18, 2016); *Thomas v. FTS USA, LLC*, 193 F. Supp. 3d 623, 629-37 (E.D. Va. 2016).

> disclosure, as required in the statute. Therefore, Syed did allege a concrete injury and has Article III standing to bring this lawsuit. *See Thomas v. FTS USA, LLC*, 193 F. Supp. 3d 623, 628–638 (E.D. Va. 2016) (holding that an improper disclosure under 15 U.S.C. § 1681b(b)(2)(A) causes "a concrete injury sufficient to confer standing").

*Id.* at *4-5. Although *Syed* was specifically evaluating the disclosure required by § 1681b(b)(2)(A), the same reasoning supports a finding that §§ 1681b(b)(2)(B) and 1681b(b)(3)(B) create similar rights to information and privacy.[8] Specifically, the provisions of the FCRA at issue here provide persons with the informational right to certain disclosures before their important private information contained in a consumer report is procured and after that information is used in an adverse employment decision. 15 U.S.C. §§ 1681b(b)(2)(B), (b)(3)(B). Thus, failure to disclose such information, resulting in inadequate consent, constitutes a violation of applicant's right to privacy. *See* 15 U.S.C. 1681b(b)(2)(B).

The Court also finds persuasive the recent opinion of the Third Circuit considering the harm of a violation of the FCRA. *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625 (3d Cir. 2017). The Third Circuit discussed *Spokeo* and concluded that although "there are some circumstances where the mere technical violation of a procedural requirement of a statute cannot, in and of itself, constitute an injury in fact," it need not "consider the full reach of congressional power to elevate a procedural violation into an injury in fact" when considering unauthorized disclosures of information under the FCRA. *Id.* at 638. The court concluded:

---

[8] Because it finds *Syed* persuasive, the Court rejects Defendant's argument that *Spokeo* drastically changed the landscape of Article III standing. *See also In re Horizon Healthcare*, 846 F.3d at 637-38 ("Although it is possible to read the Supreme Court's decision in *Spokeo* as creating a requirement that a plaintiff show a statutory violation has caused a 'material risk of harm' before he can bring suit, we do not believe that the Court so intended to change the traditional standard for the establishment of standing. . . . *Spokeo* itself does not state that it is redefining the injury-in-fact requirement. Instead, it reemphasizes that Congress 'has the power to define injuries' 'that were previously inadequate in law.'" (footnote and citations omitted)).

> We are not suggesting that Horizon's actions would give rise to a cause of action under common law. No common law tort proscribes the release of truthful information that is not harmful to one's reputation or otherwise offensive. But with the passage of FCRA, Congress established that the unauthorized dissemination of personal information by a credit reporting agency causes an injury in and of itself—whether or not the disclosure of that information increased the risk of identity theft or some other future harm. It created a private right of action to enforce the provisions of FCRA, and even allowed for statutory damages for willful violations—which clearly illustrates that Congress believed that the violation of FCRA causes a concrete harm to consumers. And since the "intangible harm" that FCRA seeks to remedy "has a close relationship to a harm [i.e. invasion of privacy] that has traditionally been regarded as providing a basis for a lawsuit in English or American courts," *Spokeo*, 136 S. Ct. at 1549, we have no trouble concluding that Congress properly defined an injury that "give[s] rise to a case or controversy where none existed before." *Id.* (citation and internal quotation marks omitted).
>
> So the Plaintiffs here do not allege a mere technical or procedural violation of FCRA. They allege instead the unauthorized dissemination of their own private information—the very injury that FCRA is intended to prevent. There is thus a *de facto* injury that satisfies the concreteness requirement for Article III standing.

*Id.* at 639-40 (footnote omitted). The Court finds persuasive these, and other cases that similarly hold that the Sections 1681b(b)(2)(B) and (b)(3)(B) and similar provisions of the FCRA establish substantive informational and privacy rights held by the consumer.

### 2. Concrete Harm—Right to Information

Plaintiff alleges two informational injuries. First, Plaintiff alleges that KKW violated 15 U.S.C. § 1681b(b)(2)(B) by obtaining his HireRight consumer report without providing any of the required disclosures. In contrast to the disclosure and authorization form at issue in *Syed*, which contained too much information and was therefore confusing, Plaintiff alleges that he received none of the required disclosures when he released his motor vehicle record to KKW. He was thus denied any opportunity to keep his personal information private or to proactively address anything that might appear in his consumer report. *See In re Horizon Healthcare*, 846

F.3d at 639 ("But with the passage of FCRA, Congress established that the unauthorized

dissemination of personal information by a credit reporting agency causes an injury in and of

itself—whether or not the disclosure of that information increased the risk of identity theft or

some other future harm."). That is a concrete injury.[9] *See Spokeo*, 136 S. Ct. at 1553-54

(Thomas, J., concurring) (noting that if Congress created a private duty owed personally to the

consumer in certain provisions of the FCRA, then violations of those provisions would confer

standing because the provision would "establish a private cause of action to vindicate the

violation of a privately held right").

KKW argues that Plaintiff alleges only that he received one FCRA-compliant form when

he was entitled to another form, and that Plaintiff has not suffered an injury as a result of this

"alternative disclosure." ECF 61 at 7. But Plaintiff does not allege that he received a FCRA-

compliant form. To the contrary, Plaintiff alleges that the form he received contained none of the

required FCRA disclosures. *See* Second Am. Compl. ¶¶ 61-63. Plaintiff thus alleges a concrete

injury.

Second, Plaintiff alleges that KKW failed to notify him under 15 U.S.C.

§ 1681b(b)(3)(B) when it took adverse employment action against him because of information

---

[9] In its motion to dismiss, KKW relies on *Nokchan v. Lyft, Inc.*, which held that after
*Spokeo* a "violation of a disclosure requirement under the FCRA, by itself, [cannot] confer
Article III standing on a plaintiff." 2016 WL 5815287, at *9 (N.D. Cal. Oct. 5, 2016). *Nokchan*
involved a disclosure form that did not "stand-alone" as required under § 1681b(b)(2)(B)(i). *Id.*
at *4. Because the Ninth Circuit's recent holding in *Syed* contradicts the holding in *Nokchan*,
*Nokchan* is unpersuasive. *See Syed*, 2017 WL 1050586, at *4-5. Moreover, *Nokchan* is factually
distinguishable. In its response to Plaintiff's notice of supplemental authority (ECF 61), KKW
cites *Mitchell v. WinCo Foods, LLC*, 2017 WL 901093, at *2 (D. Idaho Mar. 7, 2017). *Mitchell*
is likewise unpersuasive because it does not address *Syed*, and because it is factually
distinguishable. *See id.* at *1 (explaining that the plaintiff alleged that although she had been
hired at WinCo, she did not receive a stand-alone disclosure form).

contained in Plaintiff's A-Check consumer report. Second Am. Compl. ¶¶ 69-71. KKW argues

Plaintiff's allegations are insufficient to establish a concrete injury because Plaintiff does not

allege that the information contained in his A-Check report was inaccurate. KKW assumes that

§ 1681b(b)(3)(B) has only one purpose: to allow prospective employees to correct inaccurate

information in their consumer reports. This interpretation reads too much into *Spokeo*'s dicta,

and too little into the statutory text.

Under § 1681b(b)(3)(B)(I), an employer must give notice to an applicant "that adverse

action *has been taken* based in whole or in part on a consumer report received from a consumer

reporting agency" within three days of the adverse action. (emphasis added). That this notice

comes after the adverse action is significant. Inaccurate information in a consumer report,

Congress recognized, could be a potential roadblock to *future* employment. *See Spokeo*, 136 S.

Ct. at 1555 n.3 ("[T]he right here at stake is closely tied to the FCRA's goal of protecting

consumers against dissemination of inaccurate credit information about them."); *Syed*, 2017

WL 1050586, at*2 (explaining that FCRA disclosures provide "applicants with an opportunity to

warn a prospective employer of errors in the report before the employer decides against hiring

the applicant on the basis of information contained in the report"). For this reason, the

§ 1681b(b)(3)(B) notice must inform the unsuccessful applicant that he may "request a free copy

of a report and may dispute with the consumer reporting agency the accuracy or completeness of

any information in a report." § 1681b(b)(3)(B)(IV); *see Spokeo*, 136 S. Ct. at 1550 ("Congress

plainly sought to curb the dissemination of false information by adopting procedures designed to

decrease that risk.").

Congress did not, however, condition the protections in the FCRA on the accuracy or

inaccuracy of the information contained in the consumer report. *See* 15 U.S.C.

§§ 1681b(b)(2)(B), (b)(3)(B). The Court can envision numerous reasons why such protections were put in place, regardless of accuracy. For example, if a potential employer notifies a candidate that he or she was not hired because of information in a consumer report, that person can then attempt to "clean up" his or her consumer report, even if the information is accurate. There are many steps consumers can take to improve their consumer reports. Consumers would also then be on notice that a consumer report has been considered negatively by potential employers. Thus, when applying for another job, if consumers receive the required notice that similar consumer reports will be used, they can make educated decisions whether to continue in the hiring process and possibly avoid associated expenses such as traveling for interviews.

Congress also highlighted the need for "fairness of credit reporting" in part because consumer reporting agencies "have assumed a vital role in assembling and evaluating consumer credit and other information on consumers," including information about consumer's character and general reputation. § 1681(a)(2)-(3). Thus, another benefit provided by the required § 1681b(b)(3)(B) notice is that an unsuccessful applicant is given a fair opportunity to proactively address red flags in his consumer report on future applications. Thus, denying a plaintiff § 1681b(b)(3)(B) notice causes, at minimum, a risk of concrete, informational harm, even when all of the information in his or her consumer report is accurate. *See Terrell v. Costco Wholesale Corp.*, 2017 WL 951053, *3-5 (Mar. 10, 2017) (finding that Terrell's allegation that Costco's disclosure and authorization form violated § 1681b(b)(2)(A) sufficient to confer standing, although Terrell did not allege that the form was confusing or that the background report was inaccurate or prevented him from gaining employment).

The cases KKW cites to the contrary are unpersuasive. For example, in *Boergert v. Kelly Servs., Inc.*, 2017 WL 440272, at *3-4 (W.D. Mo. Feb. 1, 2017), the court rejected the Boergert's

argument that Kelly Services failed to give him notice under 15 U.S.C. § 1681b(b)(3)(A)(i). It

relied heavily on *Spokeo*. *Id.* at *4 ("The mere allegation of a [§ 1681b(b)(3)(B)] violation is not

sufficient here, especially in light of *Spokeo's* specific reference to the issue of inaccurate

information."). But in *Spokeo*, the Supreme Court did not conclude that alleging "inaccurate

information" is the exclusive means for pleading a concrete injury under § 1681b(b)(3)(B).

*Spokeo*, 136 S. Ct. at 1550 ("A violation of *one* of the FCRA's procedural requirements *may*

result in no harm." (emphasis added)); *see also Syed*, 2017 WL 1050586, at *4 ("The disclosure

requirement at issue, 15 U.S.C. § 1681b(b)(2)(A)(i), creates a right to information by requiring

prospective employers to inform job applicants that they intend to procure their consumer reports

as part of the employment application process. . . . By providing a private cause of action for

violations of Section 1681b(b)(2)(A), Congress has recognized the harm such violations cause,

thereby articulating a 'chain[ ] of causation that will give rise to a case or controversy.'" (second

alteration in original) (quoting *Spokeo*, 136 S. Ct. at 1549)).

      Moreover, *Spokeo*'s cautionary example that a consumer's information may be "entirely

accurate" was not referencing an employer's duty to give § 1681b(b)(3)(B) notice to an

unsuccessful applicant. *Spokeo*, 136 S. Ct. at 1550. Rather, what *Spokeo* addressed was a

hypothetical consumer reporting agency's failure "to provide the required notice to a *user* of the

agency's consumer information." *Id.* (emphasis added); *see also id.* at 1553-54 (Thomas, J.,

concurring) (distinguishing duties owed under the FCRA to the public collectively and duties

owed to a consumer privately). Under the FCRA, a "user" of a consumer reporting agency's

information or a "person" who furnishes information to the reporting agency or requests a

consumer report from the agency is distinct from a "consumer." *Compare, e.g.*, 15 U.S.C.

§ 1681b(b)(1) (requiring "Certification from User") and 15 U.S.C. § 1681b(b)(2) (requiring

"Disclosure to Consumer"). With this understanding, the *Spokeo* majority's hypothetical is not instructive in this case because it does not address the consumer's statutory rights at issue in this case.

Additionally, KKW's reliance on *Dutta v. State Farm Mut. Auto. Ins. Co*., 2016 WL 6524390 (N.D. Cal. Nov. 3, 2016), is not persuasive because *Dutta* is factually distinguishable and was issued before the Ninth Circuit's opinion in *Syed*. In *Dutta*, the court found that the plaintiff did not allege a concrete injury when he claimed only that the defendant failed to send him his § 1681b(b)(3) notice within the statutorily required time period. *Id.* at *3 (citing *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 21 (1998)) (explaining that to allege a concrete injury a plaintiff must allege "an actual denial of information—not just a delay in getting it"). By contrast, Plaintiff alleges that KKW did not provide him any disclosures under § 1681b(b)(3)(B).

By alleging that he suffered informational injury when KKW failed to provide him with § 1681b(b)(2)(B) and § 1681b(b)(3)(B) disclosures, Plaintiff has adequately alleged concrete harms.

### 3.    Concrete Harm—Right to Privacy

In considering whether the relevant provisions of the FCRA provide a right to privacy, the violation of which gives rise to a concrete injury, the Ninth Circuit's recent decision in *Syed* is again instructive. In considering the sufficiency of allegations of an employer's purported violation of § 1681b(b)(2)(A)(ii), the Ninth Circuit in *Syed* found that a disclosure form that contained FCRA disclosures and simultaneously served as a liability waiver was confusing, "deprived [applicants] of their ability to meaningfully authorize the credit check," and thus violated the applicants' right of privacy created under § 1681b(b)(2)(A)(ii). *Syed*, 2017 WL 1050586, at *3-4. Although *Syed* involved a different provision of the FCRA, the Court

finds that § 1681b(b)(2)(B)(ii), which requires that employers obtain consent from applicants before obtaining their credit reports, creates a similar "right to privacy by enabling applicants to withhold permission to obtain the report from the prospective employer." *Id.*

The Court notes that other courts similarly have found a right to privacy in the FCRA, the violation of which confers a concrete injury. For instance, the Third Circuit recently explained that plaintiffa allege more than "a mere technical or procedural violation of FCRA" when alleging "the unauthorized dissemination of their own private information—the very injury that FCRA is intended to prevent" because then there is "a *de facto* injury that satisfies the concreteness requirement for Article III standing." *In re Horizon Healthcare*, 846 F.3d at 640 (citations omitted) (plaintiff's personal information stored on laptops was disseminated when the laptops were stolen from defendant, although plaintiffs did not allege the information was used to their detriment); *see also Moody*, 2016 WL 5900216, at *3, *6 (finding plaintiff's allegation— "Plaintiffs' consumer report contained a wealth of private information which Defendant Ascenda had no right to access absent a specific Congressional license to do so. . . . By procuring reports containing this private information without complying with the FCRA's disclosure requirements, Defendant Ascenda illegally invaded Plaintiff's right to privacy."—sufficient to allege a concrete injury); *Firneno*, 2016 WL 5899762, at * 4 (finding in a case involving the FCRA that the plaintiffs "persuasively argue that 'the invasion of privacy caused by the unauthorized viewing and retention of their personal credit and other information'—including the last four digits of their social security number, their address, and the exact amount of debt owed to creditors—is a *de facto* injury that satisfies the injury-in-fact requirement" and that the plaintiffs' "right to privacy is 'more substantive than procedural' such that the alleged violation is a concrete harm"); *Perrill*, 2016 WL 4572212, at *3-4 (analyzing whether the alleged invasion of privacy under the

FCRA "'has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit,'" concluding that it does, that "Congress's judgment in enacting the FCRA was to provide consumers a right to privacy," and holding that "[c]onsidering this history and Congress's judgment, the Court finds an invasion of privacy within the context of the FCRA constitutes a concrete harm that meets the injury-in-fact requirements" (quotation marks omitted)).

In his concurrence in *Spokeo*, Justice Thomas held that where a statute involves procedures to protect the accuracy of information "*concerning the individual about whom the report relates*" and "Congress has created a private duty owed personally to [a plaintiff] to protect *his* information, then the violation of the legal duty suffices for Article III injury in fact" without requiring an allegation that the plaintiff has suffered individualized harm. *Spokeo*, 136 S. Ct. at 1554 (Thomas, J, concurring) (emphasis in original) (quotation marks omitted). That is the situation alleged in this case. The FCRA provides a private duty owed to Plaintiff to protect the accuracy, procurement, and use of Plaintiff's private information, and KKW is alleged to have violated that duty both by procuring Plaintiff's consumer report and using it against him without following the mandated procedures. Plaintiff alleges more than a technical deficiency; he alleges that he was not provided proper disclosures, did not therefore give knowing consent to KKW's procurement of his consumer report, and that KKW nonetheless procured Plaintiffs' consumer report, unlawfully violating Plaintiffs' privacy.[10] *See In re Horizon Healthcare*, 846 F.3d at 640.

---

[10] The cases on which KKW relies do not persuade the Court otherwise. *Smith* and *Groshek* heavily rely on the plaintiffs' failure to allege actual damages, which is not required to allege Article III standing under Supreme Court jurisprudence. *See Groshek v. Time Warner Cable, Inc.*, 2016 WL 4203506, at *3 (E.D. Wis. Aug. 9, 2016); *Smith v. Ohio State Univ.*, 191 F. Supp. 3d 750, 757 (S.D. Oh. 2016); *see also Perrill*, 2016 WL 4572212, at *4 (distinguishing *Smith* and *Groshek* on this ground, citing cases). Further, as KKW quotes in its reply brief, the plaintiff in *Groshek* did not allege that the defendant used the consumer report in any way or that

Thus, Plaintiff has sufficiently alleged a right to privacy created by § 1681b(b)(2)(B) of the FCRA. Plaintiff has also sufficiently alleged a violation this right, which is a concrete injury sufficient to confer Article III standing.

### 4. Particularized Injury

KKW also argues that Plaintiff's allegations do not sufficiently plead a particularized injury. The Court rejects this argument. Plaintiff alleges that his private and confidential consumer reports were obtained without the required notice and consent, were used as a basis for KKW's refusal to hire Plaintiff, and that plaintiff was not properly notified of that basis after KKW's adverse decision. These are particularized injuries.

### B. Factual Predicate for Plaintiff's Allegations

KKW also argues that the "factual predicate" for Plaintiff's allegation that KKW requested his consumer report from HireRight is incorrect. KKW argues that, contrary to Plaintiff's allegations, it did not request Plaintiff's consumer report from HireRight. Rather, KKW asserts that it requested Plaintiff's MVR from a company called USIS.[11] KKW argues that Plaintiff's first claim for relief must be dismissed because Plaintiff does not allege that HireRight and USIS are connected and fails to allege how the procurement of Plaintiff's MVR is amenable to the same determination on a class-wide basis as those purported class members whose HireRight reports were requested.

---

he did not get the job he applied for. *See* ECF 58 at 8 (citing 2016 WL 4203506, at *3). Similarly, the plaintiffs in *Smith* ultimately were hired by the defendants. Here, Plaintiff alleges that KKW used Plaintiff's consumer reports and did not hire Plaintiff because of the information contained in his consumer reports. Thus, *Groshek* and *Smith* are distinguishable.

[11] It is unclear whether KKW asserts that USIS is connected to Total Information Services, Inc., d/b/a DAC Services, the company listed on the release form signed by Plaintiff.

KKW's argument is inappropriate at this stage of the litigation. In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson*, 668 F.3d at 1140; *Daniels-Hall*, 629 F.3d at 998. KKW's assertion that the Court may look outside the pleadings is correct only in evaluating jurisdiction, not in evaluating whether the "factual predicate" of a complaint is accurate.[12]

Plaintiff alleges that KKW obtained Plaintiff's MVR from HireRight. Plaintiff further alleges that he did not discover this fact until HireRight produced to Plaintiff the report it provided to KKW. Plaintiff attaches to the Second Amended Complaint a copy of the report produced to Plaintiff from HireRight and identified as being provided to KKW. These allegations are sufficient to survive KKW's motion.

Moreover, were the Court permitted to look at evidence beyond the factual allegations in the complaint, the Court would find that KKW's response to Plaintiff's Interrogatory No. 19 calls into question any assertion that USIS and HireRight are not linked.[13] *See* ECF 43,[14] Ex. 1. Regardless, Plaintiff's factual allegations are well-pleaded, presumed true, and sufficient to withstand KKW's motion to dismiss.

---

[12] Whether HireRight and USIS are connected does not affect this Court's subject-matter jurisdiction. Plaintiff has adequately alleged violations of the FCRA, a federal statute, and thus the issue before the Court is a federal question. 28 U.S.C. § 1331.

[13] KKW did not object to Plaintiff's characterization of USIS as a subsidiary, associated entity, or former entity of HireRight and does not assert that, in fact, USIS and HireRight are unconnected.

[14] ECF 43 was later withdrawn. *See* ECF 45.

**CONCLUSION**

Defendant KKW Trucking, Inc.'s Renewed Motion to Dismiss (ECF 51) is DENIED.

**IT IS SO ORDERED**.

DATED this 29th day of March, 2017.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge