**Justin M. Baxter,** Oregon State Bar ID Number 992178
Email: justin@baxterlaw.com
**BAXTER & BAXTER, LLP**
8835 S.W. Canyon Lane, Suite 130
Portland, Oregon 97225
Telephone (503) 297-9031
Facsimile (503) 291-9172

**Matthew A. Dooley,** *Pro Hac Vice*
Email: mdooley@omdplaw.com
**Anthony R. Pecora,** *Pro Hac Vice*
Email: apecora@omdplaw.com
**O'TOOLE, MCLAUGHLIN, DOOLEY & PECORA, LPA**
 5455 Detroit Road
Sheffield Village, Ohio 44054
Telephone (440) 930-4001
Facsimile (440) 934-7208

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**DISTRICT OF OREGON**
**PORTLAND DIVISION**

| | |
|---|---|
| **RODERICK C. DEMMINGS**, on behalf of himself and all others similarly situated, | |
| | Case No 3:14-CV-00494-SI |
| Plaintiff, | |
| v. | **PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |
| **KKW TRUCKING,** | |
| Defendant. | |

Now comes the Plaintiff, Roderick Demmings, by and through counsel, and hereby moves the Court pursuant to Fed. R. Civ. P. 23 for final approval of the class action settlement. A memorandum in support is attached hereto and incorporated herein.

Respectfully submitted,

/s/ Matthew A. Dooley

Matthew A. Dooley
Email: mdooley@omdplaw.com
Anthony R. Pecora
Email: apecora@omdplaw.com
O'TOOLE, MCLAUGHLIN, DOOLEY &
PECORA, CO LPA
5455 Detroit Road
Sheffield Village, Ohio 44054
Telephone (440) 930-4001
Facsimile (440) 934-7208

Justin M. Baxter
Baxter & Baxter, LLP
Washington State Bar No. 39182
(503) 297-9031 (Telephone)
(503) 291-9172 (Facsimile)
justin@baxterlaw.com

Attorneys for Plaintiff

4830-8480-1391, v. 6

## TABLE OF CONTENTS

I.  Introduction ................................................................................................................ 1

II. The Settlement Administration Process ................................................................... 2

III. The Final Approval Analysis .................................................................................. 2

    A.  The settlement satisfies the criteria for final approval. ..................................... 3

        1.  KKW's Ability to Pay a Larger Settlement ................................................. 3

        2.  Strength of Demmings's case ...................................................................... 4

        3.  The Extent of Discovery and Stage of Proceedings .................................... 5

        4.  The Risk, Expense, Complexity, and Likely Duration of Further Litigation .............. 5

        5.  The Amount offered in Settlement ............................................................... 6

        6.  The Experience and Views of Class Counsel ............................................... 7

        7.  The Reaction of the Class Members .............................................................. 7

        8.  Attorneys' Fees and Costs ............................................................................ 8

        9.  Distribution of the Settlement ...................................................................... 9

    B.  Plaintiff's request for a service award should be granted. ................................ 9

    C.  The notice process is constitutionally sound. .................................................... 9

    D.  The Preliminary Settlement Class should be finally certified. ....................... 10

IV. Conclusion ............................................................................................................ 10

4830-8480-1391, v. 6

# TABLE OF AUTHORITIES

Cases

*Churchill Vill., L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ................................................................... 2
*City of Seattle*,
   955 F.2d ................................................................................................. 4
*Clemans v. New Werner Co.*,
   2013 WL 12108739 (W.D. Wash. 2013) ................................................ 4
*Craft v. Cnty. of San Bernardino*,
   624 F. Supp. 2d 1113 (C.D. Cal. 2008) ................................................. 8
*Dutta v. State Farm Mut. Auto. Ins. Co.*,
   No. 16-17216, 2018 WL 3400571 (9th Cir. July 13, 2018)................... 5
*Groshek v. Time Warner Cable, Inc.*,
   865 F.3d 884 (7th Cir. 2017) ................................................................. 5
*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1988) ............................................................... 3
*Ikuseghan v. Multicare Health System*,
   2016 WL 3976569 (W.D. Wash. 2016) ................................................ 3
*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ................................................................. 3
*In re Cardizem Antitrust Litig.*,
   218 F.R.D. 508 (E.D. Mich. 2003) ....................................................... 8
*In re Delphi Corp. Sec. Litig.*,
   248 F.R.D. 483 (E.D. Mich. 2008) ....................................................... 7
*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) .............................................................. 3, 5
*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) ................................................................. 3
*Media Vision Tech. Sec. Litig.*,
   913 F. Supp. 1362 (N.D. Cal. 1996) ..................................................... 8
*Officers for Justice v. Civil Service Com'n of City and County of San Francisco*,
   688 F.2d 615 (9th Cir. 1982) ................................................................. 4
*Pelletz v. Weyerhaeuser Co.*,
   592 F. Supp. 2d 1322 (W.D. Wash. 2009)......................................... 9, 10
*Pelletz v.Weyerhaeuser Co.*,
   255 F.R.D. 537 (W.D. Wash. 2009) ..................................................... 7
*Radcliffe v. Experian Info. Solutions*,
   715 F.3d 1157 (9th Cir. 2013) ............................................................... 9
*Safeco Ins. Co. of Am. v. Burr*,
   551 U.S. 47 (2007)................................................................................. 5
*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016)........................................................................... 5
*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ................................................................. 3
*Steiner v. Am. Broad. Co.*,

4830-8480-1391, v. 6

    248 F. App'x 780 (9th Cir. 2007) .......................................................................... 8
*Syed v. M-I, LLC,*
    853 F.3d 492 (9th Cir. 2017) .......................................................................... 4, 5
*Van Vranken v. Atl. Richfield Co.,*
    901 F. Supp. 294 (N.D. Cal. 1995) .................................................................. 8

Statutes

15 U.S.C. 1681b(b)(2) and 1681b(b)(3) ............................................................... 5
15 U.S.C. § 1681p ............................................................................................... 1
15 U.S.C. § 1681b(b)(2) ...................................................................................... 4
15 U.S.C. § 1681b(b)(2)(A) .................................................................................. 5

Rules

Fed. R. Civ. P. 23 ......................................................................................... i, 3, 4

Other Authorities

Newberg on Class Actions, §11.48 ..................................................................... 8

4830-8480-1391, v. 6

## MEMORANDUM IN SUPPORT[1]

### I.    Introduction

The settlement in this FCRA class action will pay a significant recovery to Class Members about whom KKW obtained a consumer report, and in some cases used that report to deny employment. On May 21, 2018, the Court preliminarily approved the Amended Stipulation of Settlement (Docs. 96 and 97), which requires KKW to deposit $550,000.00 to pay Class Members and Class Counsel's attorney fees. (Doc. 96, ¶ 2.4). More specifically, the settlement creates a Class Recovery Fund of $330,000.00 to pay Class Members and allocates a separate $220,000.00 for which Class Counsel may petition the Court to pay attorney fees. (*Id.*)

Each Class Member stands to receive a gross amount of approximately (*Id.* ¶ 2.5):

| HireRight Disclosure Class | $222.00 |
|---|---|
| 0-2 Year HireRight Disclosure Subclass[2] | $377.00 |
| Adverse Action Class | $503.00 |
| 0-2 Year Adverse Action Subclass | $917.00 |

Demmings and Class Counsel believe the settlement is fair, adequate, reasonable, and in the best interest of the Settlement Class, and Class Members agree. Although the deadline to object is August 22, 2018 and the deadline to opt out is August 24, 2018, no Class Member has objected

---

[1] All defined terms shall have the same meanings used in the Amended Stipulation of Settlement (Doc.96).

[2] The application of a 0-2 year subclass in this case is intended to recognize that other Class Members with claims that accrued more than two years prior to the filing of the lawsuit would be subject to a statute of limitations defense under 15 U.S.C. 1681p.

4830-8480-1391, v. 6

and only five have opted out. The Preliminary Settlement Class's positive reaction to the settlement weighs heavily in favor of final approval.

## II.     The Settlement Administration Process

After the preliminary approval was entered, Defense Counsel provided Dahl with a list of 993 names and addresses believed to be associated with the Class Members. (*See* Affidavit of Mailing, ¶4), Dahl updated the addresses using the National Change of Address database. (*Id.* ¶8). Dahl then mailed the notices (*Id.* Ex. A and B) to each of the 942 individuals for whom a complete address could be located, and Dahl re-mailed any notices that were returned with forwarding address information. (*Id.* ¶¶ 10, 11) In all, 851 notices were delivered, or 90% percent of the Preliminary Settlement Class. (*Id.*). This percentage is well-within the Federal Judicial Center guidelines for adequate notice and satisfies due process.

Dahl also established a website where Class Members could easily seek answers to frequently-asked questions and download settlement documents and key pleadings. (*Id.* ¶13). Additionally, Dahl will upload Class Counsel's separately-filed fee petition within twenty-four hours of filing so that Class Members can review it and consider any objection will in advance of the deadline to file objections with the Court. (*Id.*)

## III.    The Final Approval Analysis

The approval process for a class action settlement takes place in three stages. *See Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (describing the three-stage settlement approval process). The Court has already granted preliminary approval of the settlement and notices have been sent to Class Members. Thus, the first two stages are complete. The Court now must determine whether, in light of all the information learned during the first two stages, final approval is warranted. *See id.* The Court has broad discretion to approve or reject a proposed

settlement. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 942, 944 (9th Cir. 2015) (noting standard of review is "clear abuse of discretion" and emphasizing appellate court's review is "extremely limited"). When considering a motion for final approval of a class action settlement under Rule 23, a court must determine whether the settlement is "fundamentally fair." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1988). A settlement merits final approval, when "the interests of the class as a whole are better served by the settlement than by further litigation." Manual for Complex Litigation (Fourth) ("MCL 4th") § 21.61, at 421–22 (2015).

## A.    The settlement satisfies the criteria for final approval.

When deciding whether to grant final approval to a class action settlement, courts generally consider 10 factors, including: (1) a defendant's ability to pay a larger settlement; (2) the strength of the plaintiffs' case; (3) the extent of discovery completed and the stage of the proceedings; (4) the risk, expense, complexity, and likely duration of further litigation; (5) the amount offered in settlement; (6) the experience and views of counsel; (7) the reaction of the class members to the proposed settlement; (8) the presence of a governmental participant; (9) whether the attorney fees request is indicative of collusion; and (10) whether distribution favors certain class members at the expense of others. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946–47 (9th Cir. 2011); *see also Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) ("The district court must show that it has explored these factors comprehensively to survive appellate review.") Here, the litigation does not include a governmental participant, and all remaining nine factors support final approval.

### 1.    KKW's Ability to Pay a Larger Settlement

Notably, this factor does not appear to be a mandatory condition of final approval, as not all courts in this district consider it as part of a Rule 23 analysis. *See, e.g., Ikuseghan v. Multicare*

*Health System,* 2016 WL 3976569 (W.D. Wash. 2016) (not considering ability pay more in final approval of Rule 23 settlement); *Clemans v. New Werner Co.*, 2013 WL 12108739 (W.D. Wash. 2013) (same). Additionally, the Ninth Circuit has noted that this factor is only one in a balancing test and is only has "some bearing" on settlement approval when viewed in conjunction with all the other factors below. *See Officers for Justice v. Civil Service Com'n of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) ("The relative degree of importance to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case.")

Here, this factor is not compelling or particularly useful. Whether KKW was theoretically able to pay a larger settlement is dwarfed by the other factors in this case, as it would have attacked class certification and the case on the merits in the absence of this settlement. *See City of Seattle*, 955 F.2d at 1295 (noting that the state had the ability to pay a greater amount, but that the state may have otherwise attacked and plausibly defeated the action in the absence of the specific settlement). Based upon their review of documents provided during discovery, and uncertainty in the law as explained below, Class Counsel concluded that the settlement was a good outcome for the Class Members.

2.      Strength of Demmings's case

Demmings continues to believe he has a strong case especially in light of the decision reached in *Syed* where the Ninth Circuit became the first appellate court to examine claims pursuant to 15 U.S.C. § 1681b(b)(2). *Syed v. M-I, LLC*, 853 F.3d 492 (9th Cir. 2017). The Ninth Circuit found that the district court had erred in dismissing the plaintiff's complaint, which alleged that defendant had violated the Fair Credit Reporting Act's stand-alone disclosure requirement by including extraneous information in the disclosure. *Id.* at 507. The court further held that the

Page 4

defendant's inclusion of a liability release constitutes a willful violation of 15 U.S.C. § 1681b(b)(2)(A). *Id.* Still, Demmings acknowledges that he faced challenges in establishing Article III standing in light of the Supreme Court's decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) and the burden of demonstrating that KKW knowingly or recklessly violated the FCRA. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 59-60 (2007) (willful failure to comply with the FCRA can be established by a knowing or reckless violation of the statute). Indeed, circuit courts throughout the United States – including the Ninth Circuit – recently dismissed FCRA claims brought under 15 U.S.C. 1681b(b)(2) and 1681b(b)(3). *See, e.g. Dutta v. State Farm Mut. Auto. Ins. Co.*, No. 16-17216, 2018 WL 3400571 (9th Cir. July 13, 2018); *Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 885 (7th Cir. 2017), *cert. denied,* 138 S. Ct. 740, 199 L. Ed. 2d 617 (2018).

### 3.    The Extent of Discovery and Stage of Proceedings

Whether the parties had enough information to make an informed decision about the strength of their respective cases is a key factor in assessing the reasonableness of a proposed settlement. *In re Mego*, 213 F.3d at 458. With the full benefit of written discovery and multiple depositions, the parties participated in **three** mediations: the first on March 30, 2015 with Jeff Batchelor in Portland, the second on November 2, 2015 with Judge Terry Lukens in Seattle and the third on November 10, 2017 with Rodney Max in Los Angeles. (Doc. 95, at p. 2). This was not a lightly-litigated case, and the parties had all information needed to make an informed decision about whether the settlement offered would provide sufficient relief for the Class Members.

### 4.    The Risk, Expense, Complexity, and Likely Duration of Further Litigation

At the time this case settled, it was understood that if the case proceeded to trial and Demmings failed to prove that KKW willfully violated the FCRA, his claims on behalf of the

Class Members would fail, and he, along with each potential class member, would not recover any monetary relief. But if Demmings did prevail at trial, he and any potential class member could seek to recover statutory damages between $100.00 and $1,000.00, plus attorney's fees and potentially punitive damages under the FCRA. Any subsequent appeals would further jeopardize relief for the Class. This factor, when considered against the results achieved for the Class Members favors approval.

> ### 5.    The Amount offered in Settlement

The Stipulation of Settlement requires KKW to pay $550,000.00 to compensate Class Members and Class Counsel through two separate funds. The Class Recovery Fund contains $330,000.00 to compensate only Class Members, and from which the Court may approve the payment of settlement administration costs, litigation expenses and a service award.[3] The remaining $220,000.00 is allocated to pay Class Counsel's attorney fees; any amount not approved from this fund would flow into the Class Recovery Fund. If the Court approves the payment of settlement administration costs, litigation expenses and service award from the Class Recovery Fund, each class member will receive a net check in the amount of:[4]

| | |
|---|---|
| **HireRight Disclosure Class** | **$153.00** |
| **0-2 Year HireRight Disclosure Subclass** | **$308.00** |
| **Adverse Action Class** | **$434.00** |
| **0-2 Year Adverse Action Subclass** | **$848.00** |

---

[3] The settlement administration expenses are $10,338.00, and the litigation expenses are $40,665.06. These expenses will be itemized as part of Class Counsel's Motion for Attorney Fees, Reimbursement for Litigation Expenses and a $7,500.00 service award to be filed separately.

[4] Each of the 851 Class Members would share a pro rata portion of $58,503.06, which is approximately $69.00.

Page 6

Notably, some Class Members below to both an Adverse Action Class and a HireRight Disclosure Class, and are thus eligible to receive two checks. These amounts far exceed awards approved in similar FCRA settlements. See, e.g., *Townsend v. Sterling Jewelers*, No. 1:13-CV-3903 (N.D. Ill. Sept. 15, 2014) (approving $50 net payment per class members who did not receive disclosure forms); *Marcum v. Dolgencorp,* No. 3:12-CV-00108 (E.D. Va. Oct. 16, 2014) (approving $53.00 net payment per class members who received inadequate disclosure); *Kirchner v. Shred-it USA Inc.*, No. 2:14-CV-01437-WBS(EFB) (E.D. Cal. Mar. 31, 2015) (approving $45.55 payment per class members who received a disclosure form that included a liability release); *Rodriguez v. Chuck E. Cheese's*, No. 3:14-CV-00677 JLS (JLB) (S.D. Cal. Dec. 14, 2015) (approving a $36.00 net payment per class members who receive a disclosure containing extraneous information); *Speer v. Whole Foods Market Group, Inc.*, No. 8:14-CV-03035-RAL-TBM (M.D. Fla. Oct. 9, 2015) (approving $24.00 net payments per class members who receive a disclosure containing a liability waiver).

### 6.    The Experience and Views of Class Counsel

Where Class Counsel are qualified and well informed, their opinion that a settlement is fair, reasonable, and adequate is entitled to significant weight. *See Pelletz v.Weyerhaeuser Co.*, 255 F.R.D. 537, 543 (W.D. Wash. 2009). Class Counsel are very experienced in the litigation of FCRA cases similar to this one. (Doc. 92-1, at ¶ 6). Importantly, Class Counsel believe the settlement is fair, reasonable, adequate, and in the best interest of the Settlement Class as a whole.

### 7.    The Reaction of the Class Members

Out of 851 Class Members who received notice, only five opted out and none objected. (Dahl Decl. ¶¶14, 15). The overwhelming silence from Class Members, lack of objectors and small number of opt-outs demonstrates that the settlement is adequate. *In re Delphi Corp. Sec. Litig.*,

Page 7

248 F.R.D. 483, 488-89 (E.D. Mich. 2008); *In re Cardizem Antitrust Litig.*, 218 F.R.D. 508, 527 (E.D. Mich. 2003) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement."); Newberg on Class Actions, §11.48.

8.    <u>Attorneys' Fees and Costs</u>

For all the reasons set forth in Plaintiff's Motion for Attorneys' Fees and Reimbursemnet of Costs and Service award, Class Counsel's requested fees and costs are reasonable.

Here, Class Counsel spent approximately 963.75 hours prosecuting this case, incurring more than $388.662.25 in attorney fees. (Doc. No. 98-1, ¶16). Thus, their requested fee represents a ***negative*** multiplier of 1.7. Indeed, Class Counsel do not seek their lodestar, but rather the amount negotiated with KKW at an arms-length mediation, and only after the recovery for the Class Members had been agreed upon. Almost uniformly, courts approving attorney fees in class actions are forced to evaluate a ***positive*** multiplier instead. *See Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (approving multiplier of 3.6); *Steiner v. Am. Broad. Co*., 248 F. App'x 780, 783 (9th Cir. 2007) (approving a multiplier of 6.85, finding that it "falls well within the range of multipliers that courts have allowed"); *Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (approving a multiplier of 5.2 and stating that "there is ample authority for such awards resulting in multipliers in this range or higher").

Separately, Class Counsel's requested costs of $40,665.06 incurred over the course of four years of contentious litigation, including three mediations spread out across the United States, are reasonable. *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) ("Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit from the settlement.")

9.    Distribution of the Settlement

The settlement treats all Class Members equally and fairly and does not subject any Class Member to a claims process. Simply put, unless a Class Member opts out, they will receive a pro rata share of the Class Member Recovery Fund. the process for making claims is simple and efficient. If, after checks have been distributed, any amount remains will be donated to a *cy pres* beneficiary approved by the Court.

**B.    Plaintiff's request for a service award should be granted.**

Plaintiff's request for a service award, which is generally approved so long as the award is reasonable and does not undermine the adequacy of the class representative, should be approved. *See Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1164 (9th Cir. 2013) (finding service award must not "corrupt the settlement by undermining the adequacy of the class representatives and class counsel"). Plaintiff requests the service award not to exceed $7,500. (Doc. 96, at ¶ 8.4). In contrast to the rejected service awards in *Radcliffe*, Plaintiff's support of the settlement is independent of any service award and not conditioned on the Court awarding any particular amount or any award at all. *See* 715 F.3d at 1161. Here, Plaintiff's requested service award is warranted and in line with awards approved by this Court. *See, e.g., Pelletz v. Weyerhaeuser Co*., 592 F. Supp. 2d 1322, 1329–30 & n.9 (W.D. Wash. 2009) (approving $7,500 service awards and collecting decisions approving awards ranging from $5,000 to $40,000).

**C.    The notice process is constitutionally sound.**

This Court has already determined that the proposed notice process in this case meets the requirements of due process. (Doc. 97). Dahl fully implemented the notice process and estimates it provided 90% of the Preliminary Settlement Class members with direct notice. (Dahl Decl. ¶11). Dahl has maintained the settlement website and Class Counsel answered inquiries from several of

Page 9

Preliminary Settlement Class members who called the number dedicated to the settlement. Dahl has confirmed that the notice process satisfies due process and represents the best notice practicable. (*Id*. ¶¶6-12).

**D.    The Preliminary Settlement Class should be finally certified.**

This Court previously granted class certification for settlement purposes only. (Doc. 97). For all the reasons set forth in Plaintiff's preliminary and final approval briefing, the Court should finally certify the Settlement Class.

**IV.    Conclusion**

Based upon the foregoing argument, Plaintiff respectfully requests that the Court enter an Order finally approving the Amended Stipulation of Settlement and certifying the Classes and Subclasses defined therein.

Respectfully submitted,

/s/ Matthew A. Dooley
Matthew A. Dooley
Email: mdooley@omdplaw.com
Anthony R. Pecora
Email: apecora@omdplaw.com
O'TOOLE, MCLAUGHLIN, DOOLEY &
PECORA, CO LPA
5455 Detroit Road
Sheffield Village, Ohio 44054
Telephone (440) 930-4001
Facsimile (440) 934-7208

Justin M. Baxter
Baxter & Baxter, LLP
Washington State Bar No. 39182
(503) 297-9031 (Telephone)
(503) 291-9172 (Facsimile)
justin@baxterlaw.com

Attorneys for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on August 6, 2018, I caused to be filed Plaintiff's Motion for Final

Approval of Class Action Settlement using the U.S. District Courts CM/ECF Electronic Filing

System, which will electronically serve a copy of such filing upon all counsel of record.

<u>/s/ Matthew A. Dooley</u>
Matthew A. Dooley

4830-8480-1391, v. 6