# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **RODERICK DEMMINGS**, on behalf of himself and all others similarly situated,<br><br>   Plaintiff,<br><br>v.<br><br>**KKW TRUCKING, INC.**,<br><br>   Defendant. | Case No. 3:14-cv-0494-SI<br><br>**OPINION AND ORDER APPROVING SETTLEMENT, ATTORNEY'S FEES, EXPENSES, AND INCENTIVE AWARD** |

Justin M. Baxter, BAXTER & BAXTER, LLP, 8835 S.W. Canyon Lane, Suite 130, Portland, OR 97225; Matthew A. Dooley and Anthony R. Pecora, O'TOOLE, MCLAUGHLIN, DOOLEY & PECORA, LPA, 5455 Detroit Road, Sheffield Village, OH 44054. Of Attorneys for Plaintiff.

Dennis G. Woods and Andrew T. Gust, SCHEER LAW GROUP, 101 S.W. Main Street, Suite 1600, Portland, OR 97204. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

   This is a class action under Rule 23 of the Federal Rules of Civil Procedure brought by Plaintiff Roderick Demmings ("Plaintiff" or the "Class Representative") individually and on behalf of others similarly situated. Plaintiff alleges that Defendant KKW Trucking, Inc. ("KKW") violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681b(b)(2)(B) and 1681b(b)(3)(B). Plaintiff alleges that KKW obtained consumer reports without providing proper

notice or obtaining appropriate consent and took adverse action against Class Members based on the content of the consumer reports without providing appropriate notice. Before the Court are Plaintiff's unopposed motions for Final Approval of Class Action Settlement (ECF 99) and for Attorney's Fees, Costs, and Service Award (ECF 98). The Court has considered the motions, the Amended Stipulation of Settlement ("Amended Stipulation" or "Settlement Agreement"), the papers submitted in connection with both motions, the arguments of counsel, the response of the Settlement Class to the Class Notices, and the files, records, and proceedings in the above-captioned action ("Action"). The final approval hearing was held on September 5, 2018. For the following reasons, Plaintiff's motion for final approval of the Settlement Agreement is GRANTED and motion for fees and costs is GRANTED IN PART.

Class Counsel is awarded attorney's fees in the amount of $165,000, to be paid from the $550,000 Settlement Fund. Class Counsel is awarded costs in the amount of $18,908.50, to be paid out of the Settlement Fund. The Class Representative is awarded $7,500 as an incentive award, to be paid from the Settlement Fund. Class Counsel shall pay settlement administration costs in the amount of $10,338, to be paid from the Settlement Fund. The remaining $348,253.50 in the Settlement Fund shall be distributed to the Class Members as described in the Amended Stipulation.

## STANDARDS

Rule 23(e) of the Federal Rules of Civil Procedure provides, in part, that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." When a district court evaluates a class action settlement under Rule 23(e), the court must determine whether the settlement is fundamentally fair, reasonable, and adequate. *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements

affecting their rights." *Id.*; *see also* 2 MCLAUGHLIN ON CLASS ACTIONS § 6:4 (12th ed. 2015) ("In the context of reviewing a proposed class action settlement, the district court has a special duty to act as guardian for the interests of absent class members because they are not present but will be bound by the disposition of the case.").

The Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). "But where, as here, class counsel negotiates a settlement agreement before the class is even certified, courts 'must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations.'" *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011)). "In such a case, settlement approval 'requires a higher standard of fairness' and 'a more probing inquiry than may normally be required under Rule 23(e).'" *Id.* (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

## BACKGROUND

On March 25, 2014, Neil C. Scott filed the original complaint in this case, on behalf of himself and all others similarly situated. On June 12, 2015, the complaint was amended to add Roderick C. Demmings as a named plaintiff and purported class representative. Mr. Scott later withdrew as a named plaintiff, leaving only Mr. Demmings. Mr. Demmings filed his Second Amended Complaint on November 9, 2016.

KKW filed a motion to dismiss, primarily based on standing and the Supreme Court's decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). The Court denied KKW's motion, primarily based on the Ninth Circuit's then-recent decision in *Syed v. M-I, LLC*, 853 F.3d 492 (9th Cir. 2017). Although *Syed* involved claims under 15 U.S.C. § 1681b(b)(2)(A), and

Plaintiff's claims are under § 1681b(b)(2)(B) and 1681b(b)(3)(B), the Court found the reasoning of *Syed* to be persuasive and that the provisions under which Plaintiff brought his claims created similar rights to information and privacy.

The parties engaged in formal discovery. KKW provided Class Counsel with thousands of pages of documents. These documents included, among other things, its hiring practices, the applicants who were the subject of Consumer Reports during the Class Period, and the documents used by KKW to obtain applicants' Consumer Reports. The parties conducted depositions.

The parties also participated in three mediations. The first mediation took place on March 30, 2015, with Jeff Batchelor in Portland, Oregon. The second mediation occurred on November 2, 2015, with Judge Terry Lukens in Seattle, Washington. The third mediation was on November 10, 2017, with Rodney Max in Los Angeles, California. The parties continued to discuss settlement after the third mediation with the assistance of Mr. Max. The parties first negotiated a $330,000 "Class Recovery Fund" to pay the Class Members, the settlement administrative fees, the incentive award for the Class Representative, and approved litigation costs up to $50,000. The parties then separately negotiated a $220,000 amount to pay attorney's fees, with the understanding that any amount not awarded by the Court to counsel would go the Class Recovery Fund. The $550,000 total comprises the Settlement Fund.

On March 30, 2018, Plaintiff filed an unopposed motion for preliminary approval of class action settlement. The Court denied this motion on April 16, 2018, identifying a number of issues, concerns, and deficiencies raised by the proposed settlement agreement and notice process. After the Court's denial of the first motion for preliminary approval, the parties participated in further negotiations and reached the Amended Stipulation. On May 17, 2018,

Plaintiff filed a renewed motion for preliminary approval. The Court granted this motion, preliminarily approving the Amended Stipulation and the Settlement Class; appointing Matthew A. Dooley, Anthony R. Pecora, and Justin Baxter as Class Counsel; authorizing Class Counsel to hire a third-party claims administrator; approving the Class Notice for distribution; and requiring that the Class Notice be mailed and posted on the internet on a website dedicated to the settlement. The Court also set deadlines for opting out of the Settlement Class and objecting to the Settlement Agreement or proposed attorney's fees and incentive award. Class Counsel hired Dahl Administration, LLC ("Dahl") as claims administrator.

Dahl received a file containing 993 records of putative class members. After processing all of the data, Dahl created a Class Member database of 942 Class Members. Dahl mailed the Class Notice to all 942 Class Members. The post office returned 118 notices as undeliverable. Dahl sent 115 records without forwarding addresses to a professional tracking service, which was able to locate 26 updated addresses. In total, updated addresses could not be found for 92 Class Members. Thus, 851 Class Members received the Class Notice.

These actions sufficiently notified Class Members of the proposed settlement of the alleged FCRA violations, the proposed attorney's fees and incentive awards, the right to opt out of the settlement, the right to object to the Settlement Agreement or fee or incentive awards, the process and deadline for lodging an objection, that a final approval hearing on the proposed settlement was scheduled for September 5, 2018, and the process and deadline for requesting participation in the final approval hearing. Plaintiff also filed his motion seeking final approval of the settlement, and requesting attorney's fees, expenses, and incentive awards before the deadline for objections. Only six Class Members opted-out of the Settlement Class. No

objections were filed to the Amended Stipulation, proposed attorney's fees or expenses, or proposed incentive award.

## DISCUSSION

### A. Certification of the Settlement Class

#### 1. Notice to the Class

The Court granted preliminary approval to the parties' proposed notice procedure after the parties made certain amendments to the notice as requested by the Court. *See* ECF 94, 95, 96, 97. The Court is satisfied that the notice procedure was carried out according to the applicable standards. The Court finds that notice of the Amended Stipulation was given to the Settlement Class by the best means practicable under the circumstances, including mailing the notice to Class Members and posting the notice, Settlement Agreement, and preliminary approval order on a dedicated website.

The Class Notice provided Class Members with all required information including, among other things: (1) a summary of the Action and the claims asserted; (2) a clear definition of the Settlement Classes and subclasses; (3) a description of the material terms of the Amended Stipulation; (4) the fact that no affirmative action was required to receive the benefit of class membership, but notice that Class Members could opt out of the Settlement Class; (5) an explanation of Class Members' opt-out rights, the date by which Class Members must opt out, and information regarding how to do so; (6) explaining the release of claims should Class Members choose to remain in the Settlement Class; (7) instructions about how to object to the Amended Stipulation and the deadline for Class Members to submit any objections; (8) instructions about how to object to the requested attorney's fees, expenses, and service award and the deadline for Class Members to submit any objections; (9) the date, time, and location of the final approval hearing; (10) the internet address for the settlement website and the telephone

number from which Class Members could obtain additional information about the Amended

Stipulation; (11) contact information for the settlement administrator and the Court; and

(12) information regarding how Class Counsel and the Class Representative would be

compensated. The notice is sufficient. *See Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th

Cir. 2012) (reaffirming that a class notice need only "generally describe[] the terms of the

settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come

forward and be heard" (alteration in original) (quoting *Rodriguez v. W. Publ'g Corp.*, 563

F.3d 948, 962 (9th Cir. 2009)).

The form and method of notifying the Settlement Class fairly and adequately advised

Class Members of all relevant and material information concerning the Action and the terms of

the proposed Amended Stipulation. The Court finds that the notice satisfies the requirements of

due process and Rule 23.

### 2. Final Certification

The parties jointly move to resolve this case as a settlement class. In order to certify a

settlement class, the requirements of Rule 23 of the Federal Rules of Civil Procedure must be

satisfied. *See Hanlon*, 150 F.3d at 1019. Rule 23 affords this Court with "broad discretion over

certification of class actions ." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1021 (9th

Cir. 2011), *abrogated on other grounds by Comcast Corp. v. Behrend*, 569 U.S. 27 (2013). A

plaintiff seeking class certification must satisfy each requirement of Rule 23(a)—numerosity,

commonality, typicality, and adequacy of representation—and at least one subsection of

Rule 23(b). *See, e.g.*, *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 724 (9th Cir. 2007).

The parties agreed to certification of the class for settlement purposes, and the Court previously

evaluated the requisite factors in conditionally certifying the class for settlement purposes in the

preliminary approval of the Amended Stipulation. When the Court denied Plaintiff's first motion

for preliminary certification, however, the Court stated:

> [F]or final approval, "[w]hen a district court, as here, certifies for class action settlement only, the moment of certification requires heightened attention" and "rigorous analysis" that is "supported by sufficient findings to be afforded the traditional deference given to such a determination." *In re Hyundai and Kia Fuel Econ. Litig.*, 881 F.3d 679, 690 (9th Cir. 2018) (quoting *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 848-49 (1999) (first alteration added, second alteration in original).

ECF 94 at n.1. Thus, the Court performs the requisite rigorous analysis whether to certify for

settlement purposes the following Settlement Classes and Subclasses:

    1.    The **HireRight Disclosure Class**:

> All persons residing in the United States who applied for a position with Defendant described by 15 U.S.C. § 1681b(b)(2)(C) during the Class Period and about whom Defendant procured a consumer report from HireRight.

    1(a)    The **0-2 Year HireRight Disclosure Subclass**:

> All persons residing in the United States who applied for a position with Defendant described by 15 U.S.C. § 1681b(b)(2)(C) from March 25, 2012 through March 25, 2014 and about whom Defendant procured a consumer report from HireRight.

    2.    The **Adverse Action Class**:

> Consumers residing in the United States who applied for a position with Defendant described by 15 U.S.C. § 1681b(b)(2)(C) during the Class Period: (a) who were listed on Defendant's non-hire log as being disqualified for: (1) Points; (2) Accidents; (3) Work History; (4) Criminal; and/or (5) Tested Positive at Prior Employer; and (b) about whom Defendant obtained a consumer report from A-Check and/or HireRight that contained potentially adverse information before Defendant disqualified them from employment. Specifically excluded from the Adverse Action Class definition are consumers on whom Defendant ran only an A-Check report between January 6, 2013 and March 25, 2014.

2(a)    The **0-2 Year Adverse Action Subclass**:

> Consumers residing in the United States who applied for a
> position with Defendant described by 15 U.S.C.
> § 1681b(b)(2)(C) from March 25, 2012 through March 25,
> 2014: (a) who were listed on Defendant's non-hire log as
> being disqualified for: (1) Points; (2) Accidents; (3) Work
> History; (4) Criminal; and/or (5) Tested Positive at Prior
> Employer; and (b) about whom Defendant obtained a
> consumer report from A-Check and/or HireRight that
> contained potentially adverse information before Defendant
> disqualified them from employment. Specifically excluded
> from this Class are consumers on whom Defendant ran only an
> A-Check report between January 6, 2013 and March 25, 2014.

### a. Rule 23(a) Requirements

#### i. Numerosity

In this district, there is a "rough rule of thumb" that 40 class members is sufficient to meet the numerosity requirement. *Giles v. St. Charles Health Sys., Inc.*, 294 F.R.D. 585, 590 (D. Or. 2013); *see also Wilcox Dev. Co. v. First Interstate Bank of Or., N.A.*, 97 F.R.D. 440, 443 (D. Or. 1983) (same); 1 *McLaughlin on Class Actions* § 4:5 (14th ed.) ("The rule of thumb adopted by most courts is that proposed classes in excess of 40 generally satisfy the numerosity requirement."). With 942 Class Members, the Court finds that the numerosity requirement is met.

#### ii. Commonality

In order to satisfy the commonality requirement, Plaintiff must show that the class members suffered the "same injury"—that their claims depend upon a "common contention." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (quotation marks omitted). "That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* But class members need not

have *every* issue in common: Commonality requires only "a single significant question of law or fact" in common. *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012); *see also Wal-Mart*, 564 U.S. at 359. The Class Members have the significant issues of law and fact in common of whether KKW's notice was adequate under the FCRA, and whether KKW's use of the consumer reports violated the FCRA given the post-use notice provided by KKW. Thus, the commonality requirement is satisfied.

### iii. Typicality

In order to meet the typicality requirement, plaintiffs must show that the named parties' claims or defenses are typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). Under the "permissive standards" of Rule 23(a)(3), the "representative's claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). In order to determine whether claims and defenses are typical, courts look to "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* (quotation marks omitted); *see also Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010).

Plaintiff alleges that KKW used standard forms and followed a uniform protocol regarding the use of consumer reports to accept or reject an applicant. Thus, Plaintiff presents claims that are typical of the claims held by each Class Member of the respective classes.

### iv. Adequacy of representation

Rule 23(a)(4) states that before a class can be certified, a court must find that "the representative parties will fairly and adequately protect the interests of the class." This requirement turns on two questions: (1) whether "the named plaintiffs and their counsel have any conflicts of interest with other class members"; and (2) whether "the named plaintiffs and their counsel [will] prosecute the action vigorously on behalf of the class." *Hanlon*, 150 F.3d at 1020. The adequacy requirement is based on principles of constitutional due process; accordingly, a court cannot bind absent class members if class representation is inadequate. *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940); *Hanlon*, 150 F.3d at 1020.

Plaintiff has shown that he understands and accepts his responsibilities as Class Representative. Plaintiff has not demonstrated interests that are adverse to the Class Members. Further, Plaintiff and the Class Members requested uniform statutory damages as the result of KKW's alleged violations of the FCRA. There is no potential for conflicting interests in this action, and there is no disagreement between Plaintiff's interests and those of the Class Members. Additionally, Class Counsel are experienced in class action litigation and are competent to represent the interests of the Class Members. Thus, the Court finds adequacy of representation.

### v. Ascertainability

Rule 23 also requires, implicitly, that the members of the proposed class be objectively ascertainable. *Ott v. Mortg. Inv'rs Corp. of Ohio, Inc.*, 65 F. Supp. 3d 1046, 1064 (D. Or. 2014). A proposed class must be "precise, objective, [and] presently ascertainable." *See Williams v. Oberon Media, Inc.*, 468 F. App'x 768, 770 (9th Cir. 2012) (alteration added) (quotation marks omitted). Class members must be identifiable through "'a manageable process that does not require much, if any, individual factual inquiry.'" *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 237

(N.D. Cal. 2014) (quoting William B. Rubenstein, *Newberg on Class Actions* § 3:3 (5th ed.)). This requirement does not entail, however, that "*every* potential member . . . be identified at the commencement of the action." *Id.* (quotation marks omitted) (emphasis added).

The classes and subclasses were readily ascertainable. The 993 records of putative class members were identifiable, and able to be processed by Dahl into 942 Class Members.

### b. Rule 23(b) Requirements

Rule 23(b) requires a court to find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." This analysis, in accord with Rule 23's "principal purpose" of "promot[ing] efficiency and economy of litigation," inquires into "the relationship between the common and individual issues in the case, and tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation."*Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 964 (9th Cir. 2013) (quotation marks omitted). The focus of this inquiry, however, is on "*questions* common to the class"—plaintiffs need not, at this threshold, "prove that the predominating question[s] will be answered in their favor." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459, 468 (2013) (emphasis in original).

KKW's alleged conduct involved a standard process that was form-driven. The predominant issues involve whether KKW's conduct was uniform with respect to all Class Members and the relative culpability of KKW's conduct. Courts routinely certify classes involving similar standardized conduct and standard from contracts and documents. *See, e.g.*, *Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003) (certifying breach of contract claims where "all of the dealer agreements were materially similar and Exxon purported to reduce the price of wholesale gas for all dealers"); *Smilow v. Sw. Bell Mobile Sys.*,

323 F.3d 32, 39-42 (1st Cir. 2003) (certifying breach of contract claim based on standard form mobile phone contract and alleged breach thereof in charging for incoming calls); *Winkler v. DTE, Inc.*, 205 F.R.D. 235, 243 (D. Ariz. 2001) (certifying breach of contract claim based on standard purchase contracts of used car dealer and overcharges of official registration fees); *Kliener v. First Nat'l Bank of Atlanta*, 97 F.R.D. 683, 692 (N.D. Ga. 1983) (noting that "claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action, and breach of contract cases are routinely certified as such"). The Court finds that the common questions or law and fact predominate over the individual issues.

Regarding superiority, the purpose of Rule 23(b)(3) is "to allow integration of numerous small individual claims into a single powerful unit." *Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708, 722 (9th Cir. 2010). Here, the Settlement Class consists of 942 individuals who have low-value claims and live throughout the United States. Although they may be entitled to attorney's fees and costs if they prevail in an individual lawsuit, the individual claims likely are too small to justify the cost and effort of private counsel to file and prosecute individual actions, particularly given the state of the law after *Spokeo*. Allowing this action to proceed as a class action appears to be the superior method of adjudicating the controversy given the number of class members and amount of damages at issue for each class member.

## B. Settlement Agreement

To approve a class action settlement, a court must find that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e); *Lane*, 696 F.3d at 818. The settlement must be considered as a whole, and although there are "strict procedural requirements on the approval of a class settlement, a district court's only role in reviewing the substance of that settlement is to ensure it is 'fair, adequate, and free from collusion.'" *Lane*, 696 F.3d at 818-19 (quoting *Hanlon*, 150 F.3d at 1027). A number of factors guide this review, including: (1) the strength of

plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the

risk of maintaining class action status throughout the trial; (4) the amount offered in settlement;

(5) the extent of discovery completed and the stage of the proceedings; (6) the experience and

views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class

members to the proposed settlement. *Id*. at 819. Courts within the Ninth Circuit "put a good deal

of stock in the product of an arms-length [sic], non-collusive, negotiated resolution."

*Rodriguez*, 563 F.3d at 965.

Additionally, class action settlements involve "'unique due process concerns for absent

class members' who are bound by the court's judgments." *Radcliffe v. Experian Info. Sols.

Inc.*, 715 F.3d 1157, 1168 (9th Cir. 2013) (quoting *In re Bluetooth*, 654 F.3d at 946). Where the

settlement agreement is negotiated before formal class certification, as in this case, the district

court should engage in "an even higher level of scrutiny for evidence of collusion or other

conflicts of interest than is ordinarily required under Rule 23(e) . . . ." *In re Bluetooth*, 654 F.3d

at 946. Evidence of collusion may not be evident on the face of a settlement, and a court should

consider whether there is evidence of more subtle signs of collusion. *Staton v. Boeing Co.*, 327

F.3d 938, 958 n.12, 960 (9th Cir. 2003). The Court reviews, in turn, the relevant factors bearing

on the evaluation of whether the Amended Stipulation is fair, reasonable, and adequate.

### 1. Strength of Plaintiff's Case

This factor examines the strength of a plaintiff's case on the merits balanced against the

amount offered in the settlement. *Ontiveros v. Zamora*, 303 F.R.D. 356, 369 (E.D. Cal. 2014).

The "fairness hearing is not to be turned into a trial or rehearsal for trial on the merits," and the

court is not "to reach any ultimate conclusions on the contested issues of fact and law which

underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and

avoidance of wasteful and expensive litigation that induce consensual settlements." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

Plaintiff believes that he has a strong case, but recognizes that after *Spokeo* courts have dismissed claims under 15 U.S.C. § 1681b(b)(2) and 1681b(b)(3). Indeed, the Ninth Circuit recently affirmed dismissal of claims under these provisions in *Dutta v. State Farm Mutual Auto Insurance Co.*, 895 F.3d 1166 (9th Cir. 2017). *Dutta* had not been decided when this Court issued its Opinion and Order denying KKW's motion to dismiss. Although there are some factual differences between *Dutta* and Plaintiff's case, Plaintiff acknowledges the potential effect *Dutta* may have on the strength of Plaintiff's claims.

The amount offered in settlement is significant. Each Class Member will receive more than the minimum statutory recovery, and some will receive close to the maximum statutory recovery. The recovery is higher than many other approved FCRA class action recoveries. Thus, the Amended Stipulation balances the strengths and weaknesses of the parties' positions on standing, liability, and damages, while providing significant recovery for the class members. This factor weighs in favor of approval.

## 2. Risk, Expense, Complexity, and Likely Duration of Further Litigation

The central consideration for this factor is the expense of litigation. *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004). Generally, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Id*.

KKW denies liability and any wrongdoing. Plaintiff faced a risk of additional motion practice relating to standing and appeals on that legal issue. He also faced a risk of proving willfulness at trial. If he succeeded, each class member would receive between $100 and $1000 in statutory damages, plus attorney's fees.

The litigation also would have continued with the parties litigating class certification and likely dispositive motions on at least some aspects of the case. These litigation steps would have been expensive, complex, and protracted. The Amended Stipulation avoids these expenditures of resources for all parties and the Court. Settlement provides Class Members with "certain and prompt relief," a "significant benefit that they would not receive if the case proceeded." *See Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 446 (E.D. Cal. 2013). The monetary compensation is similar to what Class Members might have received if they had prevailed at trial. This factor weighs in favor of approval.

### 3. Risk of Maintaining Class Action Status

Although Plaintiff did not discuss this factor in his motion, Plaintiff faced some risk that his claims would not be certified as a class. KKW agreed to certification for settlement purposes, but asserted that it would contest certification outside of settlement. The Court finds that resolving the case now guarantees recovery for the participating Class Members. This factor weighs in favor of approval.

### 4. Amount Offered in Settlement

When considering the fairness and adequacy of a settlement, "it is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Ontiveros*, 303 F.R.D. at 370 (quoting *DIRECTV*, 221 F.R.D. at 527). "It is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Id.*

The estimated net recovery of Class Members, based on a calculation assuming Class Counsel is awarded the full amount requested in attorney's fees ranges from is $153 to $848, compared to the statutory recovery minimum recover of $100 and maximum of $1000. The class recoveries will increase, however, because as discussed below, the Court is not awarding Class

Counsel the full amount requested in attorney's fees.[1] Any amount not rewarded in fees reverts to the Class Recovery Fund to be distributed to Class Members. The factor supports approval.

### 5. Extent of Discovery Completed

Formal discovery is not required before a class action settlement. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239-40 (9th Cir. 1998). Rather, "[a]pproval of a class action settlement is proper as long as discovery allowed the parties to form a clear view of the strengths and weaknesses of their cases." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 454 (E.D. Cal. 2013). The Court and the parties may also rely on discovery developed in prior or related proceedings. *Linney*, 151 F.3d at 1239-40.

The parties had the benefit of written discovery. The parties had also taken depositions. The parties assert that they obtained sufficient discovery to assess the claims and defenses in this case. In addition, the parties' use of three separate mediations after conducting discovery, and the exchanges of information that occurred during and after the mediation, assure that the parties had more than adequate information with which to assess their cases and reach a reasonable settlement. This factor weighs in favor of approval.

### 6. Experience and Views of Counsel

"'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *DIRECTV*, 221 F.R.D. at 528 (quoting *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997)). "This is because 'parties represented by competent counsel are better positioned than courts to produce a

---

[1] These numbers should also increase because they are identical to the numbers asserted in the preliminary motion for approval, which were based on an assumption of 993 Class Members. With the Class Recovery Fund being divided amongst only 845 actual Class Members (the 851 who were sent Class Notices, minus the six who opted out), the individual recoveries should be higher.

settlement that fairly reflects each party's expected outcome in the litigation.'" *Id.* (alteration

omitted) (quoting *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)). Absent fraud

or collusion, courts can, "and should, rely upon the judgment of experienced counsel for the

parties," when assessing a settlement's fairness and reasonableness. *Barbosa*, 297 F.R.D. at 447.

Class counsel has nearly ten years' experience in consumer protection litigation,

particularly in claims under the FCRA. Counsel for both parties agree that the settlement is

fundamentally fair, adequate, and reasonable. The settlement is the result of arm's-length

negotiations between counsel representing the interests of Plaintiff and KKW. The settlement

was facilitated by three skilled mediators, and occurred only after factual and legal investigation.

This factor weighs in favor of approval.

### 7. Presence of a Government Participant

The Class Action Fairness Act (CAFA) provides in relevant part:

> Not later than 10 days after a proposed settlement of a class action
> is filed in court, each defendant . . . shall serve upon the
> appropriate State official of each State in which a class member
> resides and the appropriate Federal official, a notice of the
> proposed settlement . . . .

> * * *

> An order giving final approval of a proposed settlement may not be
> issued earlier than 90 days after the later of the dates on which the
> appropriate Federal official and the appropriate State official are
> served with the notice required under subsection (b).

28 U.S.C. § 1715(b), (d). The parties state that they provided notice of the proposed settlement

to the Attorneys General of the United States, all fifty States, Puerto Rico, Guam, American

Samoa, Commonwealth of the Northern Mariana Island, the U.S. Virgin Island, and District of

Columbia on April 9, 2018.[2] The 90-day notice period expired on July 9, 2018, with no Attorney General having objected to the proposed settlement.

The notice provided to the Attorneys General was of the original stipulation and not the Amended Stipulation. In considering whether notice of the original stipulation complies with § 1715, the Court finds persuasive the analysis of District Judge Jeffrey S. White of the Northern District of California, who considered the text and purpose of the statutory provision. *Smith v. Levine Leichtman*, 2014 WL 12641575, at *3-4 (N.D. Cal. Mar. 26, 2014). Judge White found that that the text of the provision was unclear as to whether notice of amendments to settlements must be provided, and concluded that although changes to the settlement in the case were "significant," they inured to the benefit of the class and thus additional notice was not necessary under the circumstances of that case. *Id.* at *4.

In the pending case, the changes in the Amended Stipulation were to provide appropriate notice to the class and ensure that the class had sufficient time to object to the requested attorney's fees, expenses, and incentive award. There were no substantive changes, let alone, "significant" changes. The changes involved the content of the notice and certain filing dates. Like in *Smith*, the changes benefited the class. The Court therefore finds that the notice of the original stipulation was sufficient to comply with § 1715 and no notice of the amendment was necessary. Additionally, the fact that no government entity objected weighs in favor of approval.

---

[2] The original affidavit of Kimberly K. Ness from Dahl stated that the CAFA notices were mailed on February 13, 2017. ECF 99-1. During the final approval hearing the Court noted that this date could not possibly be correct. Ms. Ness submitted a Supplemental Affidavit correcting her statement and clarifying that she mailed the CAFA notices for the settlement in this case on April 9, 2018. ECF 106.

### 8. Reaction of the Settlement Class

Of the 851 notice packets successfully mailed to the Class Members, no one objected and only six individuals requested to opt out from the Settlement Class. The participation rate, in combination with the lack of any objections to the Amended Stipulation, provides a strong presumption that the Amended Stipulation is fair, reasonable, and adequate. *See, e.g.*, *DIRECTV*, 221 F.R.D. at 529 ("The absence of a single objection to the Proposed Settlement provides further support for final approval of the Proposed Settlement."); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) ("By any standard, the lack of objection of the Class Members favors approval of the Settlement."). Thus, this factor weighs in favor of approval.

### 9. Evidence of Collusion

Courts considering a pre-class certification settlement must examine whether the settlement was the "result of good faith, arm's-length negotiations or the result of fraud and collusion." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 258 (N.D. Cal. 2015). The Ninth Circuit has identified three signs of collusion: (1) class counsel receives a disproportionate distribution of the settlement, or when the class receives no monetary distribution but counsel is amply awarded; (2) the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds without objection by a defendant; or (3) the parties arrange for payments not awarded to revert to a defendant rather than to be added to the class fund. *In re Bluetooth*, 654 F.3d at 947.

Class Counsel does not receive a disproportionate distribution of the settlement. The $330,000 payment to the class was negotiated first. The $220,000 set aside to compensate Class Counsel was negotiated second, but with the understanding that it is subject to Court approval and any amount not approved by the Court would be added to the $330,000 to be distributed to

the Settlement Class. Thus, if the $220,000, which is 40 percent of the total $550,000 KKW is paying to resolve this dispute, is considered too high by the Court to compensate Class Counsel, any remaining amounts not awarded to counsel reverts to the class. Further, the negotiated settlement does not rely on any attorney's fee award to counsel. Moreover, even if Class Counsel were to receive the full $220,000, the amount would not be disproportionate. The class still receives considerably more than counsel.

For the second factor, the parties negotiated a "clear sailing" arrangement whereby KKW agreed not to object to the Class Counsel's request for attorney's fees. This fact does not warrant denying final approval because the Amended Stipulation provides that the Court's approval of the attorney's fees is separate from its approval of the Amended Stipulation. Moreover, the parties engaged in settlement negotiations overseen by three different neutral mediators, and there have been no objections to the settlement. *See Deaver v. Compass Bank*, 2015 WL 8526982, at *9 (N.D. Cal. Dec. 11, 2015) (approving a proposed settlement even though two of three factors were present, including a clear sailing provision, because there were no objections to the settlement and the "parties engaged in settlement talks overseen by a neutral mediator before agreeing on this settlement").

For the third factor, the Amended Stipulation does not provide for reversion to KKW of payments not awarded. All amounts will be sent to the Settlement Class and any checks returned or not cashed will be donated to a *cy pres* beneficiary.

Although one of the *Bluetooth* factors is present, the record contains no evidence of fraud or collusion. The parties reached the Amended Stipulation only after working with neutral mediators and conducting additional negotiations. Accordingly, this factor weighs in favor of approval.

### 10. Conclusion

After considering the relevant factors and circumstances, the Court finds that the Amended Stipulation is fair, reasonable, and adequate to the Class Members and that each Class Member (except those six who have timely submitted a valid request for exclusion) shall be bound by the Amended Stipulation and this Opinion and Order. The six individuals who have timely requested exclusion from the Settlement Class are not Class Members, shall have no rights or interests with respect to the Amended Stipulation, and shall not be bound by any orders or judgments entered in respect to the Amended Stipulation. They are identified in the Opt-Out list that was filed in this case (ECF 100-1).

## C. Incentive Award, Attorney's Fees, and Costs

### 1. Incentive Award

"Incentive awards are payments to class representatives for their service to the class in bringing the lawsuit." *Radcliffe*, 715 F.3d at 1163. They are often taken from a common settlement fund. *Id.* Although incentive awards are "fairly typical in class action cases," *Rodriguez*, 563 F.3d at 958, they should be scrutinized carefully to ensure "that they do not undermine the adequacy of the class representatives." *Radcliffe*, 715 F.3d at 1163. Incentive agreements can undermine the adequacy of class representation, for example, when they are grossly disproportionate, when they incentivize class representatives to settle without considering whether trial might be more beneficial to the class, or when incentive awards are conditioned upon approving the settlement agreement. *Id.* at 1163-65. Thus, a court must look at incentive awards individually to see whether the plaintiff is protecting the interests of the class and whether the proposed incentive award undermines the plaintiff's representation of the class.

Plaintiff has pursued this case for the benefit of the class. Nothing in the settlement or the proposed incentive award supports that the award undermines Plaintiff's representation. The

award is similar in size to incentive awards granted to class representatives in this circuit. *See, e.g.*, *Brown v. Hain Celestial Grp., Inc.*, 2016 WL 631880, at *11 (N.D. Cal. Feb. 17, 2016) (approving $7,500 service awards to the named plaintiffs); *Estakhrian v. Obenstine*, 2016 WL 6517052, at *12 (C.D. Cal. Feb. 16, 2016) (same); *Custom LED, LLC v. eBay, Inc.*, 2014 WL 2916871, at *10 (N.D. Cal. June 24, 2014) (same); *Pelletz v. Weyerhaeuser Co.*, 592 F. Supp. 2d 1322, 1329-30 (W.D. Wash. 2009) (same).

### 2. Attorney's Fees

Requests for attorney's fees must be made by a motion pursuant to Federal Rules of Civil Procedure 54(d)(2) and 23(h), and notice of the motion must be served on all parties and class members. Fed. R. Civ. P. 23(h). When settlement is proposed along with a motion for certification, notice to class members of the fee motion ordinarily accompanies the notice of the settlement proposal itself. Advisory Committee Notes to Fed. R. Civ. P. 23(h). The deadline for class members to object to requested fees must be set after the motion for the fees and documents supporting the motion have been filed. *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993 (9th Cir. 2010). "Allowing class members an opportunity thoroughly to examine counsel's fee motion, inquire into the bases for various charges and ensure that they are adequately documented and supported is essential for the protection of the rights of class members." *Id.* at 994. The notice and filing of the motion for attorney's fees in this case were filed before the deadline for objections, thereby complying with *In re Mercury*. Plaintiff did not however, provide detailed supporting documents before the deadline for objections, such as the time records of counsel or any receipts or invoices supporting the requests for costs and expenses.

Plaintiff offered to provide additional supporting documents at the final approval hearing should the Court require it.[3]

Regarding attorney's fees, Plaintiff provided a summary of hours worked by each attorney. Thus Class Members had the opportunity to object that the hours worked either were inadequately documented or excessive. No such objection was filed. Moreover, as discussed below, the Court is using the percentage-of-recovery method and not the lodestar method to calculate attorney's fees, and thus the lack of detailed time records originally filed by Plaintiff is less important. The information filed by Plaintiff before the objection deadline was sufficient for a lodestar cross check. With respect to costs, Plaintiff detailed the requested costs by category and averred that the costs were reasonably necessary. This gave Class Members sufficient information to review and object that costs were unreasonably high or inadequately documented. No objections were filed. The Court finds that Plaintiff's filings sufficiently complied with *In re Mercury*, although as discussed in Section C.3 below, the Court is not satisfied with the documentation relating to the requested travel expenses.

In considering the amount of attorney's fees for class counsel where there is a common fund, "courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *In re Bluetooth*, 654 F.3d at 942.[4] Courts typically use the percentage approach when

---

[3] In response to an Order by the Court, Plaintiff filed the attorney time records before the final approval hearing and more detail regarding costs, although Plaintiff did not file any invoices or receipts relating to costs. This filing was, however, after the deadline for objections.

[4] Class Counsel asserts that when there is a federal fee-shifting statute, the "lodestar" method is appropriate, citing *In re Bluetooth*. What that case states, however, is that when there is a fee-shifting statute the "lodestar" method is appropriate "where the relief sought—and obtained—is often primarily injunctive in nature and thus not easily monetized." *In re Bluetooth*, 654 F.3d at 941. The Ninth Circuit continued, stating that when there is a common fund (as there is in this case), courts have discretion to apply the lodestar method or the percentage-of-recovery method. *Id.* at 942. The Ninth Circuit noted that it allows district courts

awarding attorney's fees with the lodestar serving as a "cross check" on the reasonableness of the percentage. *See, e.g.*, *Barbosa*, 297 F.R.D. at 448; *Franco v. Ruiz Food Prods., Inc.*, 2012 WL 5941801, at *18 (E.D. Cal. Nov. 27, 2012). Under either method, the court must exercise its discretion to achieve a reasonable result. *In re Bluetooth*, 654 F.3d at 942. Because reasonableness is the goal, "mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion." *Fischel v. Equitable Life Assurance Soc'y of the U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002).

"Under the percentage-of-the-fund method, the district court may award plaintiffs' attorneys a percentage of the common fund, so long as that percentage represents a reasonable fee. The Ninth Circuit has set 25% of the fund as a 'benchmark' award under the percentage-of-the-fund method." *Stanger*, 812 F.3d at 738 (citation omitted); *see also Hanlon*, 150 F.3d at 1029. This amount may be adjusted, however, when "special circumstances" warrant a departure. *In re Bluetooth*, 654 F.3d at 942. Courts must place in the record the relevant special circumstances. *Id*. Factors that may be considered in making such a departure include: (1) the results obtained; (2) the risks involved in the litigation; (3) counsel's skill and the complexity of the issues; (4) the effort expended by counsel; (5) the reaction of the class; (6) non-monetary or incidental benefits, including helping similarly situated persons nationwide by clarifying certain laws; (7) awards in similar cases; and (8) comparison with counsel's lodestar. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002); *In re Heritage Bond Litig.*, 2005 WL 1594403, at *18 (C.D. Cal. June 10, 2005).

"Under the lodestar method, the Court multiplies a reasonable number of hours by a reasonable hourly rate." *Fischel*, 307 F.3d at 1006. "Because there is a strong presumption that

to use the percentage-of-recovery method "in lieu of the often more time-consuming task of calculating the lodestar." *Id.*

the lodestar amount represents a reasonable fee, adjustments to the lodestar 'are the exception rather than the rule.'" *Stanger*, 812 F.3d at 738 (quoting *Fischel*, 307 F.3d at 1007). "Once the lodestar has been calculated, 'the court may adjust it upward or downward by an appropriate positive or negative multiplier reflecting a host of reasonableness factors, including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment.'" *Id.* at 740 (quoting *In re Bluetooth*, 654 F.3d at 941-42).

Plaintiff requests $220,000 in attorney's fees. Plaintiff argues that this amount is separate from the $330,000 Class Recovery Fund. Because any amount of the $220,000 not awarded to Class Counsel will revert to the Class Recovery Fund, and because the Amended Stipulation discusses the settlement as involving a $550,000 Settlement Fund, the Court considers the settlement to involve a $550,000 common fund. Thus, Plaintiff is asking for 40 percent of the common fund in attorney's fees.

Plaintiff argues that the Court should use the lodestar method and not the percentage-of-recovery method. Plaintiff does not provide a persuasive argument why the lodestar method should be used in this case. Plaintiff first argues that its lodestar is much higher than the benchmark. This factor, however, is part of the percentage-of-recovery calculation.

Plaintiff next argues that the lodestar method should be used to calculate fees instead of percentage-of-recovery because Plaintiff's fee would result in a negative multiplier. This argument fails for two reasons. First, Plaintiff requests a fee significantly lower than lodestar and thus the fee will result in a negative multiplier regardless of the method employed. Second, courts regularly apply the percentage-of-recovery method, even when it results in a negative multiplier. *See, e.g.*, *In re Uber FCRA Litig.*, 2018 WL 2047362, at *5-6 (N.D. Cal. May 2, 2018) (awarding fees that resulted in a 0.6396 negative multiplier, even though the plaintiff

requested fees that would have resulted in a 0.7895 negative multiplier); *Campbell v. Facebook Inc.*, 2017 WL 3581179, at *7 (N.D. Cal. Aug. 18, 2017) (awarding fees resulting in a 0.497 negative multiplier); *Harris v. Amgen Inc.*, 2017 WL 6048215, at *10 (C.D. Cal. Apr. 4, 2017) (awarding fees resulting in a 0.62 negative multiplier).

The Court exercises its discretion to use the percentage-of-recovery method. The Court therefore considers whether any of the relevant special circumstances warrant departure from the 25 percent benchmark and uses the lodestar as a cross-check.

### a. Results Obtained

The most critical factor in granting attorney's fees is the overall result and benefit to the class. *In re Bluetooth*, 654 F.3d at 942 ("Foremost among these considerations, however, is the benefit obtained for the class."). The Amended Stipulation provides for a $330,000 Class Recovery Fund to pay the Settlement Class, with any amount not awarded as attorney's fees added to the Class Recovery Fund. The net recovery estimates, without assuming any additional monies from unawarded attorney's fees, range from $153 to $858, with a statutory recovery range of $100 to $1000. Thus the individual recoveries of the various classes and subclasses equal greater than the statutory minimum recovery under the FCRA, and for some subclasses, are near the statutory maximum. This is an exceptional financial recovery in the FCRA class context. *See De Santos v. Jaco Oil Co.*, 2015 WL 5732829, at *13 (E.D. Cal. Sept. 29, 2015) (surveying cases pursuing claims under the FCRA and similar statutes, noting that the settlement results in those cases "range from $22.44 to $200 per class member," and finding that the results in the case before the court were "exceptional" because the settlement awarded $50 per class member in "Group 1," "approximately $350" per class member in "Group 2," and conferred non-monetary benefit on current and future applicants); *see also Ford v. CEC Entm't Inc.*, 2015 WL 11439033, at *4 (S.D. Cal. Dec. 14, 2015) (approving a $38.00 net payment per class

members for class that received a disclosure containing extraneous information); *Kirchner v. Shred-it USA Inc.*, 2015 WL 1499115, at *5 (E.D. Cal Mar. 31, 2015) (preliminary approval), *approved after final hearing by* Case No. 2:14-cv-1437-WBS(EFB), ECF 63 (E.D. Cal. Oct. 22, 2015) (final approval) (approving settlement of $45.55 payment per class member who received a disclosure form that included a liability release); *Marcum v. Dolgencorp*, Case No. 3:12-cv-0108 (E.D. Va. Mar. 4, 2015) (ECF 92) (approving, for sub classes who received inadequate disclosure, recovery of: injunctive relief for one subclass, net payment $53.00 per class member for another subclass, and up to $53 per class member of the third subclass); *Townsend v. Sterling Jewelers*, Case No. 1:13-cv-3903 (N.D. Ill. Sept. 15, 2014) (ECF 58) (approving $50 net payment per class member, for class who did not receive disclosure forms). This factor supports an increase above the 25 percent benchmark.

### b. Risk of Litigation

"The risk of costly litigation and trial is an important factor in determining the fee award." *Flores v. ADT LLC*, 2018 WL 1062854, at *14 (E.D. Cal. Feb. 27, 2018) (citing *Chem. Bank v. City of Seattle* (*In re Wash. Pub. Power Supply Sys. Litig.*), 19 F.3d 1297, 1299-1301 (9th Cir. 1994)). When considering the risks posed in litigation, "the risk of loss in a particular case . . . is a product of two factors: (1) the legal and factual merits of the claim, and (2) the difficulty of establishing those merits." *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). "In cases where recovery is uncertain, an award of one third of the common fund as attorneys' fees has been found to be appropriate." *Franco*, 2012 WL 5941801, at *16.

Although Plaintiffs faced some risks on the merits, such as proving willfulness, they were not greater than in the typical FCRA case. *See, e.g.*, *Smith v. A-Check Am. Inc.*, 2017 WL 3610592, at *7 (C.D. Cal. July 18, 2017). Plaintiffs, however, did face some increased risks

based on the evolving case law after *Spokeo*. The Court finds this factor supports a modest increase above the 25 percent benchmark.

### c. Counsel's Skill and Complexity of Issues

"The complexity of issues and skills required may weigh in favor of a departure from the benchmark fee award." *Torchia v. W.W. Grainger, Inc.*, 304 F.R.D. 256, 274 (E.D. Cal. 2014). Although the Court does not dispute the skill of Plaintiffs' counsel, as aptly explained by Judge Virginia A. Phillips of the Central District of California,

> This case, however, presents a simple dispute as to the willfulness of an FCRA violation with few novel points of law and little distinguishing it from the many others like it. Accordingly, Class Counsel has not shown exceptional skill or quality of work to warrant a departure from the 25% benchmark.

*Smith*, 2017 WL 3610592, at *7. The Court also notes that there have been some issues with incomplete documentation, an initial proposed settlement process that violated *In re Mercury*, and problems with supporting documentation in this filing (*e.g.*, the erroneous declaration of Ms. Ness, counsel's failure to comply with the Court's orders regarding supporting documentation relating to costs). Thus, this factor does not support any departure from the benchmark.

### d. Effort Expended by Counsel

Counsel expended effort in discovery, in defending a motion to dismiss, and in attending mediation. This was not an unusual or exceptional effort. Other cases involve significantly more effort, including litigating class certification and sometimes litigating appeals to the Ninth Circuit or even the Supreme Court. This factor thus does not support a fee above the benchmark.

### e. Reaction of the Class

Class Members reacted very positively to the settlement. Only six Class Members opted out of the class. No one filed any objections to the Amended Stipulation or the proposed

attorney's fees, expenses, or incentive award. Because, however, this was an "opt-out" class versus an "opt-in" class, Class Members were required to "do nothing" to remain Class Members. It was thus less onerous to participate and show "support" for the class than if it were an opt-in class.[5] The Court thus finds that this factor is neutral.

### f. Non-monetary or Incidental Benefits

This factor does not apply, as the benefits to the Settlement Class are monetary. Thus this factor is neutral.

### g. Awards in Similar Cases

The Court's research shows that although some FCRA cases in this Circuit have awarded above the benchmark, most cases do not. *See, e.g.*, *Smith*, 2017 WL 3610592, at *8 (awarding the 25 percent benchmark fee and gathering FCRA cases that awarded the same); *Ford*, 2015 WL 11439033, at *1 (awarding 33 percent fees in a FCRA case); *Razilov v. Nationwide Mut. Ins. Co.*, 2006 WL 3312024, at *1 (D. Or. Nov. 13, 2006) (awarding 30 percent fees in complex FCRA case with recovery of approximately $200). Accordingly, this factor is neutral.

### h. Comparison with Counsel's Lodestar

In doing the lodestar cross check, the Court is not performing the detailed lodestar analysis it would have performed if it used the lodestar method to calculate Plaintiff's attorney's fees. For example, the Court will not analyze counsel's time entries in detail for duplicative billing, billing for administrative tasks, or block billing. The cross check is performed at higher level, to ensure the percentage-of-recovery method does not result in a fee that is unreasonable. But it does not require spending the amount of time that is required when performing the lodestar

---

[5] Although the Court believes that it is more beneficial for Class Members to have an opt-out class than an opt-in class, under such circumstances the fact that the Settlement Class consists of such a high percentage of Class Members is less persuasive as an indication of affirmative class support of the settlement.

method of fee calculation—otherwise using the percentage-of-recovery method would not allow for the time-savings the Ninth Circuit anticipated when allowing the method "in lieu of the often more time consuming task of calculating the lodestar." *In re Bluetooth*, 654 F.3d at 942. The Court will consider the total hours asserted and a reasonable hourly rate.

Plaintiff's counsel calculates the lodestar at $388,662.25 based on 448.6 billable hours of three partners' time at $550 per hour; 267.6 billable hours of one associate's time at $350 per hour, and 247.55 billable hours of paralegal time at $195 per hour. Plaintiff argued that these rates are appropriate for the Western District of Washington, instead of looking at rates in the District of Oregon.

For calculating rates in this District, the Court finds a useful survey to be the Oregon State Bar 2017 Economic Survey, which contains data on attorney billing rates based on type of practice, geographic area of practice, and years of practice. A copy of the OSB 2017 Survey is available at http://www.osbar.org/_docs/resources/Econsurveys/17EconomicSurvey.pdf (last visited on September 18, 2018). In light of Plaintiff's counsel's expertise, the Court will consider all of the attorneys at the 95th percentile of Portland attorneys, and will base the hourly rate on years of experience. For Mr. Matthew A. Dooley, with 12 years' experience in complex consumer litigation, the Court finds that an hourly rate of $460 is appropriate, awarding Mr. Dooley the hourly rate for attorneys with 13-15 years' experience. For Mr. Anthony Pecora, the Court finds than an hourly rate of $410 is appropriate (the 95th percentile of Portland attorneys with 10-12 years' experience). For Mr. Justin M. Baxter, the Court finds that an hourly rate of $500 is appropriate (the 95th percentile of Portland attorneys with 16-20 years' experience). For Mr. Stephen M. Bosak, Jr., the Court finds that $350 per hour is an appropriate rate (the 95th percentile of Portland attorneys with 4-6 years' experience). For Ms. Audrey F.

Tedor, senior paralegal, the Court finds that an hourly rate of $125 is appropriate. The Court generally awards an hourly rate of $100 for paralegals, but Ms. Tedor is described as a senior paralegal and the Court gives some additional compensation for her seniority.

The lodestar calculation thus is as follows:

| | | | |
|---|---|---|---|
| Mr. Dooley | 286.35 hours | $460/hour | $131,721.00 |
| Mr. Pecora | 134.75 hours | $410/hour | $ 55,247.50 |
| Mr. Baxter | 27.50 hours | $500/hour | $ 13,750.00 |
| Mr. Bosak | 267.60 hours | $350/hour | $ 93,660.00 |
| Ms. Tedor | 247.55 hours | $125/hour | $ 30,943.75 |
| | | TOTAL: | $325,322.25 |

Accordingly, the lodestar calculation supports an upward departure from the benchmark.

### i. Conclusion

Considering all of the factors, the Court finds that an upward departure to 30 percent of the common fund is appropriate in this case. The Court acknowledges that this results in a greater negative multiplier than the 40 percent fee requested by Plaintiff. At Plaintiff's requested 40 percent award of $220,000, the negative multiplier would be 0.6763. The 30 percent award of $165,000 results in a negative multiplier of 0.5072. Nonetheless, the Court finds that the fee of $165,000 is fair, reasonable, and adequate compensation given all of the circumstances of this case. *See Campbell*, 2017 WL 3581179, at *7 (awarding fees resulting in a 0.497 negative multiplier).

### 3. Attorney Expenses

Plaintiff requests reimbursement for attorney expenses in the amount of $40,665.06. These costs include expenses for travel, mediation fees, legal research, deposition transcripts,

photocopy costs, overnight couriers, process servers, and the like. Plaintiff did not provide specific supporting documentation for these costs.

The Court gave Plaintiff the opportunity to provide supporting documentation for his requested expenses. Indeed, before the final approval hearing the Court issued an Order expressly stating that if Plaintiff wanted his costs to be considered by the Court, then he needed to provide supporting documentation, such as invoices or receipts. Plaintiff chose not to. Instead, Plaintiff's counsel submitted a declaration describing the costs by general category and attesting under oath that they were reasonably necessary and that Plaintiff made reasonable efforts to keep costs low. For example, counsel testified in his declaration that to keep travel costs low, counsel would take "red-eye" flights and stay in Airbnb locations. Yet Plaintiff seeks reimbursement for $21,756.56 in travel costs. That is more than half of the total costs requested.

During the final approval hearing, the Court stated that it would accept Plaintiff's explanations for all of the costs except for the travel-related costs. Plaintiff's explanations that counsel took videoconference depositions to avoid travel, limited travel to only one or two attorneys, took "red-eye" flights, and stayed at Airbnb locations, did not explain how the travel expenses reached nearly $22,000 for several trips of short duration involving only one or two attorneys.

At the final approval hearing, Plaintiff's counsel explained that air travel from Cleveland is expensive and lodging in Portland, Seattle, and Los Angeles is expensive. The Court expressed concern that even with airfare from Cleveland and a few nights hotel in those locations, the Court does not understand how travel expenses could reach nearly $22,000. The Court allowed Plaintiff one week to submit a supplemental declaration supporting travel-related costs, if Plaintiff wanted reimbursement for those expenses. The Court explained that it would not require

individual receipts and that the numbers could be "rounded." The Court noted by way of example, however, that the Court expected information such as how much was spent on airfare for a particular trip to Seattle, how much was spent on hotel for that trip, how much was spent on food, etc.

Plaintiff again did not comply with the Court's order. In Plaintiff's supplemental brief (not an attorney declaration), Plaintiff provided a summary chart showing that: (1) the Portland mediation expenses were $5,013.20 for airfare, hotel, ground expenses, and meals combined; (2) expenses for a deposition were $1,990.17 for airfare, hotel, ground expenses, and meals combined; (3) the Seattle mediation expenses were $4,442.79 for airfare, hotel, ground expenses, and meals combined; (4) the oral argument on the motion to dismiss expenses were $2,332.48 for hotel, airfare, ground expenses, and meals combined; (5) the California mediation expenses were $5,486.83 for hotel, airfare, ground expenses, and meals combined; and (6) the expenses for the final approval hearing were $2,491.09 for hotel, airfare, ground expenses, and meals combined.[6] Plaintiff's brief states that travel costs are tracked in a billing system with a "travel expense" code and that the summary submitted to the Court was created by someone reviewing all items categorized with that code and summarizing them. The Court notes that Plaintiff's counsel could simply have submitted the relevant billing entries with the travel expense code. That would have provided the detail requested by the Court, and also would have required less time and effort. Regardless, the summary provided does not comply with the Court's order—it is not evidence in a declaration and the costs are not detailed by airfare for each trip, hotel expenses for each trip, meals for each trip, etc. Plaintiff fails to provide the detail twice ordered by the Court. Accordingly, the Court does not find sufficient support for the travel expenses and

---

[6] It is unclear how Plaintiff knew the cost of ground expenses and meals for the final approval hearing when Plaintiff requested these expenses weeks before the hearing occurred.

declines to order any reimbursement for travel expenses. Although the Court recognizes that some travel expenses were incurred, Plaintiff's repeated failure to comply with the Court's orders means that the Court cannot ascertain the reasonable amount in travel expenses.[7] This results in no reimbursement being awarded for travel expenses.

The Court awards attorney expenses in the amount of $18,908.50. The Court finds these expenses have been reasonably and necessarily incurred and are recoverable from the proceeds of the common fund. *See, e.g.*, *Wininger v. SI Mgmt., L.P.*, 301 F.3d 1115, 1120-21 (9th Cir. 2002) (noting that "jurisdiction over a fund allows for the district court to spread the costs of the litigation among the recipients of the common benefit"); *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) ("Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit by the settlement.").

### 4. Administrative Costs

Plaintiff requests settlement administrative costs in the amount of $10,338, which is the amount owed thus far to Dahl, the claims administrator retained by Plaintiff's counsel to administer the settlement. Although Plaintiff did not describe or itemize these expenses, they are reasonable administrative expenses in light of the fact that the claims administrator created and hosted the claims website, provided telephone support regarding this settlement, created and maintained the Class Member address database, finalized and mailed the Class Notice, and

---

[7] For example, the Court was able to find via an internet search assuming a one-week lead time a non-red-eye, mid-week (the same days as the final approval hearing) flight on United Airlines from Cleveland to Portland, with one stop and an approximate six-hour total travel time for about $800 round trip. Assuming a two-month lead time (which actually is *less* than counsel had with the final approval hearing), the Court found a similar flight on Delta Airlines for about $400. Flights to Seattle were comparable and flights to Los Angeles were half that cost.

processed the opt-out forms.[8] The Court finds that the requested costs have been reasonably and necessarily incurred and are recoverable from the proceeds of the common fund. *See, e.g.*, *Wininger*, 301 F.3d at 1120-21. Further, payment of these costs was already factored into the allocation and communicated to the Class Members.

## CONCLUSION

Plaintiff's unopposed motion for Final Approval of Class Action Settlement (ECF 99) is GRANTED. Plaintiff's unopposed motion for Attorney's Fees, Costs and Service Award (ECF 98) IS GRANTED IN PART. Plaintiff is awarded $165,000 in attorney's fees. The remaining funds set aside for attorney's fees shall revert to the Class Recovery Fund. Plaintiff is additionally awarded, to be paid from the Class Recovery Fund, the following: $18,908.50 in attorney expenses; $7,500 to the Class Representative as an incentive award; and $10,338 to pay the claims administrator. This case is dismissed, but the Court retains jurisdiction over the parties and all matters relating to the Lawsuit and the Amended Stipulation, including the administration, interpretation, construction, effectuation, enforcement, and consummation of the settlement and this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 19th day of September, 2018.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge

---

[8] It is unclear from Plaintiff's submission, but it appears likely that additional sums will be due to Dahl to finalize the distribution of the payments to Class Members.